[No. 76064-1.   En Banc.]
Argued October 18, 2005.    Decided June 1, 2006.

COBRA ROOFING SERVICES, INC., *Petitioner*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

92

*Kevin W. Roberts* (of *Dunn & Black, P.S.*), for petitioner.

*Robert M. McKenna, Attorney General,* and *Anastasia R. Sandstrom, Assistant,* for respondent.

*Matthew T. Ries* and *William D. Hyslop* on behalf of Associated Builders and Contractors, Inc., amicus curiae.

*John H. Guin* on behalf of Inland Northwest Associated General Contractors, Inc., amicus curiae.

*Jerald A. Klein* on behalf of Washington Cedar & Supply Co., amicus curiae.

¶1 C. JOHNSON, J. — This case requires us to determine whether the Department of Labor and Industries (Department) properly found a violation of the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, to be a "repeat" violation under RCW 49.17.180(1) subject to a greater penalty. We also decide whether attorney fees may be awarded, under Washington's equal access to justice act (EAJA), RCW 4.84.340, .350, and .360, for WISHA decisions appealed to the Board of Industrial Insurance Appeals (Board) and to superior court. The Court of

Appeals held the violation was a repeat, applied the EAJA to WISHA appeals in superior court but not to the Board proceeding, and denied attorney fees to Cobra Roofing Services, Inc. (Cobra), because the Department's action was substantially justified. We affirm that the violation is a repeat and affirm the denial of attorney fees but hold that attorney fees are not awardable for WISHA decisions appealed to the Board or to superior court.

## Facts

¶2 On February 22, 2000, the Department conducted an inspection of the job site where Cobra employees worked on a school remodeling project. The Department observed that three employees working on a multi-level flat roof were not wearing any fall protection equipment or otherwise protected by a fall restraint system. Based on these observations, the Department issued four WISHA citations for safety violations. The inspector cited Cobra for failing to have an adequate fall protection system for employees working at a height of 10 feet or more (WAC 296-155-24510) and other violations that were not appealed to this court and are not before us. The Department doubled the fall protection penalty to $3,200 on the grounds it was a repeat violation. Clerk's Papers (CP) at 8. The Department had previously cited Cobra on December 13, 1999, for a violation of WAC 296-155-24510, the code provision that governs fall protection systems. CP at 9. The record gives no specific details of the nature of the 1999 violation or the conduct giving rise to that citation.

¶3 Cobra appealed the citations to the Board. An industrial appeals judge issued a proposed decision that affirmed the fall protection citation but reversed the repeat penalty.

¶4 The Department petitioned the three-member Board for review. Cobra moved for attorney fees. The Board reversed in part, finding the fall protection citation was a repeat violation. The Board denied attorney fees, concluding the EAJA does not apply to proceedings before the Board.

¶5 Cobra appealed the Board's decision to the superior court. The court affirmed the Board's decision upholding the fall protection decision. However, the court found the fall protection citation was not a repeat violation and reversed the Board on that issue. In response to Cobra's request for attorney fees, the court held the EAJA did not apply to the Board proceedings but did apply to judicial review in superior court. The court initially granted Cobra attorney fees for the appeal to superior court but, on reconsideration, denied them because both Cobra and the Department prevailed on significant issues.

¶6 Cobra appealed to the Court of Appeals, assigning error to the denial of attorney fees for its appeals to the Board and superior court.[1] The Department cross-appealed, assigning error to the reversal of the repeat violation issue and the application of the EAJA to superior court appeals of WISHA decisions. The Court of Appeals reversed in part, holding the fall protection violation was a repeat violation. The court affirmed in part, concluding attorney fees were not awardable for proceedings before the Board. The court held attorney fees could be awarded for prevailing in a superior court appeal in a WISHA case but denied the fees on the grounds that the Department prevailed on the contested issues decided by the court. *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.,* 122 Wn. App. 402, 97 P.3d 17 (2004).

¶7 Cobra petitioned this court for review to determine whether the fall protection violation was a repeat and whether the EAJA applies to Board proceedings. The Department petitioned for review on the question of whether the EAJA applies to court review of WISHA decisions. We granted review at 154 Wn.2d 1001, 113 P.3d 481 (2005).

### Repeat Violation

¶8 Under RCW 49.17.180(1), the Department may assess enhanced penalties when an employer willfully or

---

[1] The appeal to the Court of Appeals also included a challenge to another citation that is not before us.

repeatedly violates any safety or health standard promulgated under the authority of WISHA or any rule or regulation governing the conditions of employment promulgated by the Department.[2] Former WAC 296-27-16001(9) (1996) defines a "repeat violation" as "any violation of a standard or order when a violation has previously been cited to the same employer when it identifies the same type of hazard."[3] A "hazard" is "that condition, potential or inherent, which is likely to cause injury, death, or occupational disease." WAC 296-155-012.

¶9 In this case, the Department cited Cobra in 1999 and 2000 for violating the fall protection regulation, WAC 296-155-24510, which states in relevant part,

> When employees are exposed to a hazard of falling from a location 10 feet or more in height, the employer shall ensure that fall restraint, fall arrest systems or positioning device systems are provided, installed, and implemented according to the following requirements.

The regulation's subsections provide specific requirements for compliance with each of the three alternative forms of fall protection.[4]

---

[2] RCW 49.17.180(1) states:

Except as provided in RCW 43.05.090, any employer who willfully or repeatedly violates the requirements of RCW 49.17.060, of any safety or health standard promulgated under the authority of this chapter, of any existing rule or regulation governing the conditions of employment promulgated by the department, or of any order issued granting a variance under RCW 49.17.080 or 49.17.090 may be assessed a civil penalty not to exceed seventy thousand dollars for each violation. A minimum penalty of five thousand dollars shall be assessed for a willful violation.

[3] This regulation was repealed, effective August 1, 2000 (Wash. St. Reg. 00-11-098), and replaced with WAC 296-800-35040, which establishes that a repeat violation occurs when the employer has been previously cited for a "substantially similar hazard."

[4] The subsections outline safety details for each fall protection method: fall restraint systems include guardrails, safety belts or harnesses, warning lines, and safety monitors; fall arrest systems include full body harnesses, safety nets, and catch platforms; and positioning device systems must not allow employees to free fall more than two feet and must be secured to appropriate anchorages. WAC 296-155-24510(1)-(3).

¶10 Cobra argues that the Department improperly applies a general approach to determine when a repeat violation occurs on the basis that the statute requires the Department to focus on the specific conduct supporting the violation.[5] Unless the Department establishes the conduct supporting the 1999 violation, Cobra maintains that no repeat violation can be found. In support of this approach, Cobra and its amicus curiae contend that Washington's definition of "repeat violation" is ambiguous and ask the court to adopt Maryland's approach from *Commissioner of Labor & Industry v. Bethlehem Steel Corp.*, 344 Md. 17, 684 A.2d 845 (1996). This Maryland Court of Appeals case interpreted the meaning of a "repeat violation" under Maryland's model of the federal Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651-678, because neither the OSHA nor the Maryland model defined "repeat violations." The *Bethlehem Steel* test requires the government to prove the violations involve the same standard and the violative elements are substantially similar. Under this approach, Cobra argues the Department would have to prove the violations involved the same violative equipment or practice.

¶11 The Department asserts Cobra's position is inconsistent with the language of the regulations and the broad remedial purposes of WISHA. The Department contends the regulations unambiguously focus on the nature of the hazard that could result in injury, not the specific conduct. Additionally, by using the language "same type of hazard," rather than "same hazard," the applicable regulation eliminates the fact-specific inquiry Cobra seeks to impose.

¶12 We agree with the Department and reject Cobra's contention that the Department must prove the similarity of the specific equipment or practice to establish a repeat violation under Washington's regulatory scheme.

---

[5] In the Court of Appeals, amicus Building Industry Association of Washington argued the 2000 citation was not a repeat because Cobra should have been cited for violating the low-pitched roof standard, WAC 296-155-24515. In its petition for review, however, Cobra does not challenge the validity of the 2000 citation or the applicability of WAC 296-155-24510.

WISHA unambiguously defines "repeat" with respect to the nature of the hazard and requires the government to prove only that the violations involve the same type of hazard, not the same underlying conduct. The record shows that the Department cited Cobra in 1999 for violating the fall protection regulation. When the Department cited Cobra again in 2000, the record shows three Cobra employees worked on a roof without adequate guardrail systems, fall protection equipment, or fall restraint systems. Regardless of whether Cobra's 1999 violation involved the broad fall protection regulation requiring at least one of the three mechanisms or a specific subsection of the same standard, Cobra employees were exposed to the hazard of falling from a height of 10 feet or more because they lacked adequate fall protection. Accordingly, in both instances, Cobra employees were exposed to the same type of hazard.

¶13 We conclude that the Department established the violations involved the same general type of hazard by showing both violations were issued for exposing Cobra employees to the hazard of falling from a height of 10 feet or more. Cobra did not present evidence to show that the violations involved different types of hazards. Under Washington's definition of repeat violations, which focuses on the type of hazard, the Department properly determined that Cobra employees were repeatedly exposed to the same type of hazard and thus subject to enhanced penalties.

## Attorney Fees

¶14 Pursuant to the EAJA, codified at RCW 4.84.340, .350, and .360, Cobra seeks attorney fees for its appeals to the Board, the superior court, the Court of Appeals, and this court. The act is intended to provide possible attorney fees for certain individuals and qualified groups who otherwise would be deterred from defending against unjust state agency actions. *Entm't Indus. Coal. v. Tacoma-Pierce Co. Health Dep't*, 153 Wn.2d 657, 667, 105 P.3d 985 (2005). RCW 4.84.350(1) states in relevant part,

Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust.

¶15 Our primary duty in interpreting any statute is to discern and implement the intent of the legislature. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous. Application of statutory definitions to the terms of art is essential to determining the plain meaning of the statute. *J.P.*, 149 Wn.2d at 450.

¶16 RCW 4.84.340 provides the definitions for the EAJA and relies in part on the definitions provided by the Administrative Procedure Act (APA), chapter 34.05 RCW. Specifically, RCW 4.84.340(2) states that "agency action" is "agency action as defined by chapter 34.05 RCW." Similarly, RCW 4.84.340(4) states that "judicial review" means "judicial review as defined by chapter 34.05 RCW." The APA does not explicitly define "judicial review" but states that "[t]his chapter establishes the exclusive means of judicial review of agency action." RCW 34.05.510. The APA's definition of "judicial review" includes only judicial review authorized by the APA. However, the APA's provisions governing judicial review do not apply to the adjudicative proceedings of the Board of Industrial Insurance Appeals or to the Department of Labor and Industries where another statute expressly provides for review of adjudicative proceedings. RCW 34-.05.030(2)(a), (c).[6]

### 1. Administrative Proceedings

¶17 At every level of review, Cobra has requested and been denied attorney fees for its proceedings before the Board. "Judicial review," under its ordinary meaning and

---

[6] WISHA provides separately for review before the Board under RCW 49.17.140 and in superior court under RCW 49.17.150.

its limited application under the APA, applies only to a court's review, not administrative proceedings. The Court of Appeals noted that a person reading the "judicial review" section of the APA would necessarily conclude that judicial review means review by a superior court, the Court of Appeals, or the Supreme Court. *Cobra Roofing Serv.*, 122 Wn. App. at 418. Dictionary definitions of "judicial review" also limit applicability to review by a court. For example, *Black's Law Dictionary* defines "judicial review" as "[a] court's review of a lower court's or an administrative body's factual or legal findings." BLACK'S LAW DICTIONARY 852 (7th ed. 1999).

¶18 Cobra argues the EAJA applies to Board proceedings because the Board engages in the initial review of the Department's conduct in place of the superior court. However, the fact that the Board conducts a quasi-judicial act of reviewing the hearing examiner's WISHA decisions does not render it a court conducting judicial review. In construing the statute's silence with respect to proceedings before administrative agencies, the Washington Court of Appeals recognized that the EAJA authorizes attorney fees only for a court's review of agency action. *See Alpine Lakes Prot. Soc'y v. Dep't of Natural Res.*, 102 Wn. App. 1, 19, 979 P.2d 929 (1999) ("The clear implication is that our Legislature did not intend to make fees incurred at the administrative level available under the act."). Because the statute specifically limits its applicability to judicial review and judicial review is generally limited to court review, we affirm the Court of Appeals' ruling that the EAJA does not apply to administrative review before the Board.

### 2. Superior Court Proceedings

■ ■ ¶19 The Court of Appeals concluded that the EAJA applies to judicial review of WISHA decisions in superior court because nothing in the statute's language specifically precludes its application to agency actions outside the procedural boundaries of the APA. The court held that the APA references provide only definitional guidance.

However, this conclusion renders the statute's definitions meaningless. We must construe the statute to give effect to the definitions provided by the legislature. The EAJA's language indicates that the legislature specifically limited judicial review, for purposes of this statute, to judicial review authorized by the APA.

¶20 The EAJA's legislative history also supports this conclusion. When the legislature passed an amendment to the definition of "judicial review" in the EAJA, replacing "judicial review as defined by chapter 34.05 RCW" with "review of an agency action in the superior court and courts of appeal" (LAWS OF 1997, ch. 409, § 501, amending RCW 4.84.340(4)), the governor vetoed the proposed change. Governor Gary Locke reasoned that this would expand the program to judicial review of all agency actions, not just APA issues, and would extend beyond the evils the legislature intended to eliminate with the EAJA. LAWS OF 1997, ch. 409, at 2559-61.

¶21 We conclude that the attorney fees authorized by the EAJA do not apply to judicial review of agency decisions not authorized by the APA. Accordingly, we hold the Court of Appeals erred in concluding the EAJA applies in this case, which involves agency action excluded from the judicial review portions of the APA.

## Conclusion

¶22 We affirm the Court of Appeals and uphold the ruling that the Department properly issued a repeat penalty. Cobra employees repeatedly worked without adequate fall protection at a height of 10 feet or more and thus were exposed to the same type of hazard. We also affirm the Court of Appeals on the basis that the EAJA does not authorize attorney fees for administrative review before the Board. However, we conclude that the Court of Appeals' application of the EAJA to judicial review of WISHA decisions was erroneous. On this basis, we deny attorney fees

requested by Cobra for the appeal to the Court of Appeals and this court.

MADSEN, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

¶23 SANDERS, J. (dissenting) — I agree with the dissent on the merits but not on the scope of attorney fees available under the equal access to justice act (EAJA), RCW 4.84.340, .350, and .360. Both the majority and the dissent conclude the EAJA entitles a qualified party prevailing in a judicial review of an agency action to attorney fees only when the Administrative Procedure Act (APA), chapter 34.05 RCW, authorizes judicial review. I disagree. The reviewing court's source of authority is irrelevant. Any qualified party prevailing in a judicial review of any agency action is entitled to attorney fees under the EAJA.

¶24 The plain language of the EAJA entitles a qualified party prevailing in a judicial review of any agency action to attorney fees. "Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees." RCW 4.84.350(1). The section defines "[j]udicial review" as "a judicial review as defined by chapter 34.05 RCW." RCW 4.84.340(4).

¶25 In fact, chapter 34.05 RCW does not define "judicial review." However, its definitions of "[p]arty to agency proceedings" and "[p]arty to judicial review or civil enforcement proceedings" indicate "judicial review" means review by a court of general jurisdiction but not review by an administrative agency. RCW 34.05.010(12), (13). Chapter 34.05 RCW confirms this common sense interpretation of the meaning of "judicial review" by defining the "[r]elationship between this chapter and other judicial review authority." RCW 34.05.510. This section specifies that chapter 34.05 RCW "establishes the exclusive means of judicial review of agency action" with several exceptions, including,

"[t]o the extent that de novo review or jury trial review of agency action is expressly authorized by provision of law." *Id.*

¶26 In other words, "judicial review" means judicial review simpliciter. The majority presents no evidence to the contrary. The legislature's failure to enact clarifying language cannot support an interpretation lacking any support in the existing statutory language.

¶27 The majority correctly concludes a qualified party prevailing in an agency hearing is not entitled to attorney fees under the EAJA. But its contention the EAJA applies only to judicial review authorized by the APA is untenable.

¶28 I dissent.

ALEXANDER, C.J., and J.M. JOHNSON, J., concur with SANDERS, J.

¶29 CHAMBERS, J., (dissenting) — Because the majority fails to recognize that the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, contains general, specific, and ultimately extremely diverse regulations, I dissent. In my view, the majority confuses the burden of proof and fails to provide fundamental due process before the imposition of higher penalties is upheld on review for alleged "repeat" WISHA violations. Based upon the language of RCW 49.17.060, I would establish an evidentiary standard similar to that established in *Commissioner of Labor & Industry v. Bethlehem Steel Corp.*, 344 Md. 17, 684 A.2d 845 (1996), which the Department of Labor and Industries (Department) would have to meet before a repeat violation penalty is sustained. I would require the Department to demonstrate that the employer has been previously penalized for violating a substantially similar requirement of the regulation.

¶30 It should be axiomatic in a free and democratic society governed by laws that no punishment may be imposed by government for misconduct without fair warning and notice of the precise conduct that is prohibited. The federal Occupational Safety and Health Act of 1970

(OSHA), 29 U.S.C. §§ 651-678, which is the source of WISHA, is premised upon notice and fair warning of its regulations to employers. *See generally* 29 U.S.C. § 655. Under the United States Constitution, a law or regulation that does not provide fair warning of what it requires or prohibits is void as unconstitutionally vague. *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89-91, 41 S. Ct. 298, 65 L. Ed. 516 (1921). It is well accepted that occupational safety and health acts "must provide a reasonably clear standard of culpability to circumscribe the discretion of the enforcing authority and its agents." *Diamond Roofing Co. v. Occupational Safety & Health Review Comm'n*, 528 F.2d 645, 649 (5th Cir. 1976); *Bethlehem Steel Corp. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 157, 161 (3d Cir. 1978).

¶31 The Department may and should impose substantially higher penalties when an employer "willfully or repeatedly violates the requirements . . . of any safety or health standard promulgated [by the Department]." RCW 49.17-.180(1). The Department has interpreted this to mean it has to prove only that a "repeat" violation involves "the same type of hazard" as the current violation.[7] Former WAC 296-27--16001(9) (1996), *repealed by* Wash. St. Reg. 00-11-098 (Aug. 1, 2000). The Department has defined "hazard" to mean a "condition, potential or inherent, which is likely to cause injury, death, or occupational disease." WAC 296-155-012.

¶32 The real question for this court is what standard should be applied to determine whether the Department has sustained its burden of showing that the violation is the "same type of hazard" or "substantially similar hazard." Former WAC 296-27-16001(9); WAC 296-800-35040. That a clear standard is needed is illustrated by this case. The

---

[7] In 2000, the Department adopted a slightly different articulation of what constitutes a repeat violation for a "substantially similar hazard" under WAC 296-800-35040. However, the difference between "the same type of hazard" and "substantially similar hazard" does nothing to assist my analysis. Former WAC 296-27-16001(9) (1996), *repealed by* Wash. St. Reg. 00-11-098 (Aug. 1, 2000); WAC 296-800-35040.

Department issued a "repeat" violation to Cobra. An industrial appeals judge determined that there was insufficient evidence of a repeat offense because the Department failed to present any evidence of the conditions or conduct giving rise to the prior violation. Subsequently, the Board of Industrial Insurance Appeals (Board) reversed, the superior court reversed the Board, and the Court of Appeals reversed the superior court. Reviewing the very same evidence, the industrial appeals judge and the superior court concluded that there was insufficient evidence of a repeat violation, while the Board and Court of Appeals concluded that there was sufficient evidence of a repeat violation.

¶33 But despite the need for a standard to determine whether a current violation involves a substantially similar hazard, the majority provides no answer. Instead, the majority reasons that if there is a violation of the same regulation, then there must be a repeat violation. Majority at 96-98. Regrettably, that is not a useful standard since there are general and specific regulations which oftentimes deal with multiple conditions and hazards. Unfortunately, the majority compounds its error by observing that "Cobra did not present evidence to show that the violations involved different types of hazards." Majority at 98. It is the *Department*, not the *employer*, who has the burden of proof in any action involving an alleged violation under WISHA. *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012 (2004).

¶34 Cobra was cited on both occasions under a general regulation requiring adequate fall protection from a location of 10 feet or more in height. WAC 296-155-24510. Most, if not all, of the on-site work performed by any roofing company is from a height of 10 feet or more. Further, as stated above, the relevant regulation is general in nature. There are more specific standards relating to fall hazards. *See* WAC 296-155-24510, -24515. Typically, more specific standards supersede general standards. *See Donovan v. Royal Logging Co.*, 645 F.2d 822, 829 (9th Cir. 1981)

("[OSHA's] general duty clause applies [only] when there are no specific [safety] standards."). The Department has recognized that there are different risks and hazards associated with work on steep pitched roofs than on low pitched roofs. There are different standards regulating steep pitched roofs, WAC 296-155-24510, and low pitched roofs, WAC 296-155-24515. Cobra contends that WAC 296-155--24515 should have applied to the 2000 violation because their employees in that instance were working on a flat roof surrounded with a parapet, making the WAC concerning steep pitched roofs inapplicable.

¶35 Regardless of the persuasive force of Cobra's contention, at the very least, the employer is entitled to a standard that assures that enhanced penalties for repeat violations will be for violations of substantially similar requirements of regulations addressing the same hazards, not merely the same code provision that may very well address several different conditions and hazards. In other words, the employer's prior, specific conduct underlying a given hazard resulting in a citation should be substantially similar to the conduct underlying a subsequent violation involving the same hazard if a repeat violation penalty is to be imposed by the Department.

¶36 In sum, I would adopt the approach outlined in *Bethlehem Steel Corp.*, 344 Md. at 29-36, as it sets out a fair and reasonable standard and test. In that case, Bethlehem was assessed a civil penalty for a repeat violation of the Maryland Occupational Safety and Health Act (MOSHA) because of faulty electrical equipment. *Id.* at 29-37. A toaster oven had been supplied to the lunchroom by workers and one sweaty worker sadly was electrocuted while "rest[ing]" on the toaster oven. *Id.* The relevant regulation provided:

"(a) *Willful or repeated violations.* — Any employer who willfully or repeatedly violates any provision of this subtitle or any rule, regulation, standard, or order promulgated pursuant to this subtitle may be assessed a civil penalty not to exceed $10,000.00 for each violation."

*Id.* at 21 (quoting former MD. ANN. CODE art. 89, § 40 (1990)).[8] Bethlehem attempted to make a distinction between the regulations applicable to "industrial" electrical equipment and "non-industrial" electrical equipment, specifically, the toaster oven that the employees brought in for their own use. *Id.* at 24-25. Bethlehem attempted to distinguish the toaster oven from the wiring on a crane and floor mounted motors for which it had previously received citations. *Id.* at 32.

¶37 Citing federal authority, the Maryland court concluded that in order to sustain a repeated violation penalty, there must be a " 'substantial similarity of violative elements between the current and prior violations.' " *Id.* at 33 (quoting *D&S Grading Co. v. Sec'y of Labor*, 899 F.2d 1145, 1147 (11th Cir. 1990)). The court recognized that occupational safety and health standards range from those that designate specific means of preventing a hazard or hazards to those that either do not specify the means of preventing a hazard or that apply to a variety of circumstances. "The universe of OSHA and MOSHA rules and regulations is large and diverse. As the *Potlatch* Commission noted, safety standards may be quite specific, such as those that require the installation of handrails . . . or quite general, such as those that require workplace cleanliness and sanitation." *Id.* at 35. The *Bethlehem* court used the word "elements," and RCW 49.17.180(1) uses a similar word in meaning, "requirements." Given the specific language of the Washington statute, RCW 49.17.180, I would articulate the standard as follows: In order to penalize an employer for a repeat violation, the Department must demonstrate that

---

[8] The majority attempts to distinguish *Bethlehem Steel Corp.* from the facts of this case by arguing that, unlike our relevant statute and code, neither the statute nor the Maryland code define the term "repeat." However, any distinction made between the Maryland statute and code from our own RCW and WAC is illusory. RCW 49.17.180(1) provides that "any employer who willfully or repeatedly violates the requirements of RCW 49.17.060 [or] of any safety or health standard promulgated under the authority of this chapter . . . may be assessed a civil penalty." As can be seen, RCW 49.17.180(1) neither defines the term "repeat" nor how one is to determine if a requirement of any rule or regulation has been violated.

the employer has been penalized for violating a substantially similar requirement of the regulation in the past.

¶38 I agree with the majority's analysis of attorney fees.

J.M. JOHNSON, J., concurs with CHAMBERS, J.

¶39 J.M. JOHNSON, J. (concurring in dissents) — I agree with Justice Chambers' dissent that both the statutory scheme and applicable constitutional principles of notice and due process require the Department of Labor and Industries (Department) to prove charges alleged to constitute a "repeat" violation. A "repeat" charge may be sustained only where the later violation is proved substantially similar to the first. Since the Department did not meet its burden, I would reverse the violation here.

¶40 Having overturned the violation, I agree with Justice Sanders that the (then) prevailing party is entitled to attorney fees under the EAJA.