[No. 58140-6-I.    Division One.    July 2, 2007.]

Prezant Associates, Inc., *Appellant*, v. The Department of
Labor and Industries, *Respondent*.

2

*Aaron K. Owada* (of *AMS Law*), for appellant.

*Robert M. McKenna, Attorney General,* and *Michael K. Hall, Assistant,* for respondent.

¶1 SCHINDLER, A.C.J. — The Washington State Department of Labor and Industries (Department) cited Prezant Associates, Inc., for a serious violation of the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW. Because the record supports the Department's determination that Prezant did not comply with state and federal regulations in performing a good faith inspection in identifying asbestos-containing material, we affirm the Board of Industrial Insurance Appeals decision that Prezant committed a serious violation of WISHA.

## FACTS

¶2 Before beginning a planned renovation of the Miller Science Learning Center, Seattle Pacific University (SPU) accepted Prezant's bid to provide "Asbestos and Lead Consulting Services for the Miller Science Learning Center" to identify all asbestos-containing material for abatement.

¶3 In the bid, Prezant agreed that accredited Asbestos Hazard Emergency Response Act (AHERA) inspectors would follow the requirements of Washington Administrative Code (WAC) 296-62-07721, and AHERA, 40 C.F.R. pt. 763.[1] In the "Scope of Work," Prezant states that its accredited AHERA building inspectors will inventory the facility according to 40 C.F.R. pt. 763 and prepare and submit a written report containing a summary of the inspectors' findings, the laboratory test results, and an estimate for abatement costs for the asbestos-containing materials. The bid also states that Prezant will conduct asbestos and lead sampling to meet the regulatory requirements by conducting an inventory of visible building material likely to contain asbestos and analyze samples using 40 C.F.R. pt. 763. Prezant said it would:

> Walk through facility and inventory visible building materials likely to contain asbestos. All work will be conducted by AHERA Accredited Building Inspectors.
>
> Analyze samples for asbestos using test methods specified in 40 CFR ch. 1 Pt. 763 Subpart [E], Appendix A. This analysis will be performed by our in-house NVLAP [National Voluntary Laboratory Accreditation Program]-accredited laboratory.
>
> Prepare and submit a written report which contains:
>
> 1. Summary of Inspector Findings.
> 2. Estimates of removal costs of visible asbestos-containing materials.
> 3. Laboratory Results.

¶4 On September 16, 2002, Prezant issued the "Asbestos and Lead Survey Report for Sampling at the Miller Science Learning Center" (Report). According to the Report, the survey was performed according to AHERA, 40 C.F.R. pt. 763, with the stated objective of determining the quantity and location of building materials that contain asbestos. Table 1 summarizes the location of asbestos-containing material in the Miller Science Learning Center. Table 2 sets

---

[1] 40 C.F.R. pt. 763 was adopted by the Environmental Protection Agency as a part of AHERA, 15 U.S.C. § 2641.

forth an inventory of the samples tested for asbestos. The Report states that vinyl flooring material from the first and second floors in rooms 123, 124, 211, 218, and 219 were sampled, and no asbestos was detected. Table 2 also states that the samples of "vinyl floor sheeting with yellow and grey speckle pattern, paper backing and mastic" taken from rooms 123, 124, 211, 218, and 219 contained no asbestos. Based on Prezant's Report, SPU authorized Prezant to proceed with abatement. On September 12, 2003, Prezant confirmed that the asbestos identified in the Report was abated.

¶5 Democon, LLC, began work at the Miller Science Learning Center on September 21, 2003. During demolition, Democon employees removed approximately 4,800 square feet of vinyl flooring from the second floor, including the vinyl flooring in rooms 211, 218, and 219. The vinyl flooring removed from the second floor rooms contained 30 percent chrysotile asbestos. During removal, approximately 10 workers were exposed to asbestos.

¶6 During the Department's investigation, Prezant's accredited inspector, Lloyd Tangunan, admitted that he did not take any samples from the second floor rooms because he believed the flooring was the same color or texture as the sample he obtained from the first floor. But when Tangunan was shown the vinyl flooring material from the two different floors, he conceded that the vinyl flooring material was not the same color.

¶7 The Department cited Prezant for committing a serious violation of WISHA by not performing a good faith survey as required by state and federal regulations. Specifically, the Department concluded that Prezant violated WAC 296-62-07721(2)(b)(ii) by failing "to perform an adequate good faith survey to determine whether materials to be worked on or removed contain asbestos."[2]

¶8 Prezant appealed to the Board of Industrial Insurance Appeals (BIIA). In the BIIA appeal, Prezant and the Department filed cross motions for summary judgment. The BIIA ruled as a matter of law that Prezant committed a

---

[2] The Department also assessed Prezant an $1,800 penalty.

serious violation and affirmed the Department's decision to issue a citation. Prezant appealed the BIIA decision to superior court. The court affirmed the decision and awarded statutory attorney fees to the Department. Prezant appeals.

## ANALYSIS

¶9 Prezant asserts the BIIA erred in ruling as a matter of law that the inspector violated WAC 296-62-07721(2)(b)(ii) by failing to follow the sampling protocol in identifying asbestos-containing material under 40 C.F.R. pt. 763, subpart E.

¶10 In a WISHA appeal, the BIIA findings of fact are conclusive if supported by substantial evidence. RCW 49.17.150; RCW 34.05.570(3)(e); *Inland Foundry Co. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 340, 24 P.3d 424 (2001). We then review the findings to determine if they support the conclusions of law. RCW 49.17.150; *Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus.*, 136 Wn. App. 1, 4, 146 P.3d 1212 (2006).

¶11 Here, because the parties submitted cross motions for summary judgment, the only question is whether the BIIA erred as a matter of law in concluding Prezant's accredited inspector violated state and federal regulations by failing to perform a good faith survey to identify asbestos-containing material. *Tiger Oil Corp. v. Dep't of Licensing*, 88 Wn. App. 925, 930, 946 P.2d 1235 (1997). We review the BIIA's interpretation of statutes and regulations de novo. *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 409, 97 P.3d 17 (2004) (citing *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996)), *aff'd*, 157 Wn.2d 90, 135 P.3d 913 (2006).

¶12 The purpose of WISHA is to " 'assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington . . . .' " RCW 49.17.010. As a remedial statute, WISHA and its regulations are liberally construed to carry

8

out its purpose. *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 146, 750 P.2d 1257 (1988). "[R]egulations promulgated pursuant to WISHA . . . must also be construed in light of WISHA's stated purpose." *Adkins*, 110 Wn.2d at 146.

■ ¶13 The Department cited Prezant for committing a serious violation of WAC 296-62-07721(2)(b)(ii). A serious violation exists where an employer fails to comply with any health standard promulgated under WISHA and there is

> a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such work place, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

RCW 49.17.180(6).

■ ¶14 The Health and Safety-Asbestos Act, chapter 49.26 RCW, was enacted to address the public health hazard from "[a]ir-borne asbestos dust and particles . . . known to produce irreversible lung damage and bronchogenic carcinoma." RCW 49.26.010. Violation of the Health and Safety-Asbestos Act is enforced under WISHA. RCW 49.26.140.

■ ¶15 Under the Health and Safety-Asbestos Act (RCW 49.26.013(1)), and WAC 296-62-07721(2)(b)(ii), an owner or an owner's agent must perform a good faith inspection for asbestos-containing material before construction, renovation, remodeling, or demolition, which may disturb or release asbestos into the air. To ensure asbestos-containing material is properly identified and abated, RCW 49.26.013 requires an accredited inspector to perform a good faith inspection "using practices approved by the department."[3]

---

[3] RCW 49.26.013(1) provides in pertinent part:

> Any owner or owner's agent who allows or authorizes any construction, renovation, remodeling, maintenance, repair, or demolition project which has a reasonable possibility . . . of disturbing or releasing asbestos into the air, shall perform or cause to be performed, using practices approved by the department,

■ ¶16 The Environmental Protection Agency (EPA) has promulgated rules establishing the sampling and testing protocols accredited inspectors must follow when conducting an asbestos survey. *See* 40 C.F.R. pt. 763, subpart E. Prezant does not dispute that 40 C.F.R. pt. 763, subpart E governs the requirements for the good faith survey it conducted at the Miller Science Learning Center.

■ ¶17 Under 40 C.F.R. § 763.83, vinyl flooring is considered "miscellaneous material." Miscellaneous material means interior building material on structural components, structural members or fixtures, such as floor and ceiling tiles, and does not include surfacing material or thermal system insulation. 40 C.F.R. § 763.83. For miscellaneous material, the sampling protocol requires an inspector to collect samples from each homogeneous area "in a manner sufficient" to determine whether the material contains asbestos. And 40 C.F.R. § 763.86(c) sets forth the testing protocol for miscellaneous material:

> *Miscellaneous material.* In a manner sufficient to determine whether material is ACM [Asbestos Containing Material] or not ACM, an accredited inspector shall collect bulk samples from each homogeneous area of friable miscellaneous material that is not assumed to be ACM.

40 C.F.R. § 763.83 defines a "homogeneous area:"

---

a good faith inspection to determine whether the proposed project will disturb or release any material containing asbestos into the air.

Such inspection shall be conducted by persons meeting the accreditation requirements of the federal toxics substances control act, section 206(a) (1) and (3) (15 U.S.C. 2646(a)(1) and (3)).

WAC 296-62-07721(2)(b)(ii) provides in pertinent part:

Before authorizing or allowing any construction, renovating, remodeling, maintenance, repair, or demolition project, a building/vessel and facility owner or owner's agent must perform, or cause to be performed, a good faith inspection to determine whether materials to be worked on or removed contain asbestos. The inspection must be documented by a written report maintained on file and made available upon request to the director.

(A) The good faith inspection must be conducted by an accredited inspector.

an area of surfacing material, thermal system insulation material, or miscellaneous material that is uniform in color and texture.

¶18 Prezant contends the BIIA erred in concluding that Prezant's accredited inspector did not follow the sampling protocol in 40 C.F.R. pt. 763, subpart E. Prezant argues the inspector conducted the survey "in a manner sufficient" to determine whether the material contained asbestos by making a good faith effort to comply with the sampling protocol. Prezant also argues that there are no objective standards to determine the adequacy of a good faith survey. Prezant further argues the Department is trying to impermissibly impose a protocol that requires inspectors to perform a side-by-side comparison of samples to determine whether they are homogeneous and to define "homogeneous area" to mean an area observable at the same time.[4] We disagree with Prezant's arguments.

¶19 40 C.F.R. pt. 763, subpart E contains an objective standard for conducting a good faith survey. Recognizing that it is impractical to obtain a sample of every part of a building, 40 C.F.R. pt. 763, subpart E allows an inspector to identify and take samples from "homogeneous areas" of miscellaneous materials such as vinyl flooring. 40 C.F.R. § 763.83. Under 40 C.F.R. § 763.86(c), an inspector must "collect bulk samples from each homogeneous area." To ascertain whether the area is "homogeneous," the inspector must examine the material and determine whether it is "uniform in color and texture." 40 C.F.R. § 763.83.[5]

---

[4] For the first time on appeal, Prezant argues that the Department failed to establish that Prezant was SPU's agent. But under RCW 49.17.150(1), "[n]o objection that has not been urged before the board shall be considered by the court" except in the case of extraordinary circumstances. *See also Dep't of Labor & Indus. v. Nat'l Sec. Consultants, Inc.*, 112 Wn. App. 34, 38, 47 P.3d 960 (2002) (unlike the permissive language of RAP 2.5(a), RCW 49.17.150 is mandatory). In any event, SPU contracted with Prezant to conduct asbestos sampling and act as its agent in determining the presence of asbestos-containing material.

[5] Without citation to any legal authority, Prezant also contends that because the Department has not defined what would constitute sampling of miscellaneous material in a sufficient manner, the Department's citation violates due process.

¶20 Here, Tangunan admittedly obtained only a single sample for the vinyl flooring located on the first and second floors of the Miller Science Learning Center. Tangunan also admitted that he obtained the sample from the first floor prior to going upstairs to inspect the second floor rooms. Based on his belief that the vinyl flooring material from the two floors was the same, Tangunan decided that the single sample met the 40 C.F.R. pt. 763, subpart E definitions for miscellaneous material and homogeneous area. Tangunan also said that he decided to only obtain one sample because another Prezant inspector told him that in Washington, only one sample was required for miscellaneous material.

¶21 Because there is no dispute that the vinyl floor sample from the first floor was not the same color or texture as the vinyl flooring in the second floor rooms, we conclude the BIIA did not err in deciding as a matter of law that Prezant violated WAC 296-62-07721(2)(b)(ii) by not performing a good faith survey. We affirm.

COLEMAN and COX, JJ., concur.

---

We will not address constitutional claims without citation to legal authority. RAP 10.3(a)(5); *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992).