2016 JUL 18  AM 8: 36


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DEPARTMENT OF LABOR & INDUSTRIES OF THE STATE OF WASHINGTON, | ) ) ) | DIVISION ONE |
| | ) | No. 73943-3-I |
| Respondent, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| HOWARD S. WRIGHT CONSTRUCTORS LP, | ) ) ) | |
| | ) | |
| Appellant. | ) ) | FILED: July 18, 2016 |

DWYER, J. — The Department of Labor and Industries cited general contractor Howard S. Wright for violating a safety regulation enacted pursuant to the Washington Industrial Safety and Health Act (WISHA), chapter 49.17 RCW, in overseeing its subcontractor's employees. The Board of Industrial Insurance Appeals vacated the alleged violation, a decision that the Department herein disputes. Because we conclude that the Board committed an error of law in its interpretation of the pertinent regulation and that the Department properly established its prima facie case for a serious violation, we reverse the Board's decision.

I

Howard S. Wright Constructors LP (Wright) is a general contractor construction company. During 2013, Wright supervised the construction of a four-story administrative building on behalf of the Experience Music Project (EMP). Employees of both Wright and its subcontractors worked on the building's construction.

In March 2013, the Department of Labor and Industries inspected the EMP work site and found two employees of a subcontractor welding more than four feet off the ground on a narrow concrete ledge without fall protection. The ledge was created by a wooden guardrail that Wright's employees placed near the edge of a concrete surface that comprised the first floor of the building. The ledge afforded the workers a narrow surface upon which they could stand while using an arc welder to weld lintels onto the building's side.

As a result of this inspection, the Department issued Wright a citation and notice of assessment related to its oversight of its own employees, as well as its subcontractor's employees, on the EMP jobsite. The citation was issued for an alleged violation of WISHA safety regulation WAC 296-155-100(1)(a),[1] which required employers to establish, supervise, and enforce a safe and healthful working environment or, in the alternative, for an alleged violation of WAC 296-155-505(5)[2] and -505(6),[3] which required employers to provide fall protection for

---

[1] WAC 296-155-100(1)(a) (2012) as it existed on March 15, 2013, was repealed effective April 1, 2013. All citations to former WAC 296-155-100(1)(a) are to the 2012 version.

[2] WAC 296-155-505(5) (2012) as it existed on March 15, 2013, was repealed effective April 1, 2013. All citations to former WAC 296-155-505(5) are to the 2012 version.

[3] WAC 296-155-505(6) (2012) as it existed on March 15, 2013, was repealed effective April 1, 2013. All citations to former WAC 296-155-505(6) are to the 2012 version.

workers to guard against temporary conditions involving wall openings or open-sided surfaces. The Department designated the alleged violation as a serious violation.

The citation provided, in pertinent part:

As the controlling contractor, the employer did not establish, supervise, and enforce, in a manner which was effective in practice a safe and healthful working environment by allowing 2 employees of its subcontractor . . . to be subjected to hazards in violation of the Washington Administrative Code in the following instance:

The employer did not ensure that a fall protection system was used on every open-sided floor located four feet or more above adjacent floors or ground level. The first floor had an open-sided surface about the ground level exposing three employees to a fall hazard of approximately 6 feet to compacted dirt below.

Two employees were exposed to a fall hazard of approximately 6 feet, which could potentially result in injuries requiring hospitalization.

The Department issued a corrective notice of redetermination affirming the citation in September 2013. Wright thereafter appealed the redetermination to the Board of Industrial Insurance Appeals. After a hearing, an Industrial Appeals Judge (IAJ) issued an initial proposed decision and order that vacated the citation. In its Conclusion of Law 2, the IAJ concluded, "The Department failed to present a prima facie case that Howard S. Wright Constructors committed a serious violation of WAC 296-155-100(1)(a) on March 15, 2013."

The Department petitioned for review of the IAJ's decision, but the Board affirmed.

The Department appealed to the King County Superior Court, which reversed the Board's final order and affirmed the Department's corrective notice of redetermination.

This appeal followed.

II

The Department contends that the Board committed an error of law by misconstruing the open-sided walking or working surface regulations and further contends that substantial evidence supports the Department's citation of Wright for a serious violation of WISHA regulations. We agree with both contentions.

A

We review a decision by the Board directly, based on the record before the agency. Frank Coluccio Constr. Co. v. Dep't of Labor & Indus., 181 Wn. App. 25, 35, 329 P.3d 91 (2014).[4]

We review the Board's interpretation of statutes and regulations de novo. Prezant Assocs., Inc. v. Dep't of Labor & Indus., 141 Wn. App. 1, 7, 165 P.3d 12 (2007). We review findings of fact to determine whether they are supported by substantial evidence and, if so, whether the findings support the conclusions of law. RCW 49.17.150(1); Coluccio Constr., 181 Wn. App. at 35. The Board's findings of fact are conclusive if supported by substantial evidence when viewed in light of the record as a whole. RCW 49.17.150(1); RCW 34.05.570(3)(e); Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus., 136 Wn. App. 1, 4, 146

_____

[4] Wright, on numerous occasions, argues that the superior court erred in its findings of fact and conclusions of law. Because we review the record before, and the decisions of, the Board, Wright's contentions regarding the superior court's actions need not be addressed. Coluccio Constr., 181 Wn. App. at 35.

-4-

P.3d 1212 (2006). Substantial evidence is evidence "in sufficient quantity to persuade a fair-minded person of the truth of the declared premise." Coluccio Constr., 181 Wn. App. at 35. Unchallenged findings of fact are verities on appeal. Coluccio Constr., 181 Wn. App. at 35.

B

The Department asserts that the Board committed an error of law by construing the regulations governing open-sided walking or working surfaces as inapplicable to the narrow ledge created by a guardrail's placement near the edge of a concrete slab. The Department is correct.

As set forth above, "[w]e review the [Board's] interpretation of statutes and regulations de novo." Prezant Assocs., 141 Wn. App. at 7. "We accord substantial weight to an agency's interpretation within its area of expertise and uphold that interpretation if it reflects a plausible construction of the regulation and is not contrary to legislative intent." Coluccio Constr., 181 Wn. App. at 36 (citing Roller v. Dep't of Labor & Indus., 128 Wn. App. 922, 926-27, 117 P.3d 385 (2005)). "But we retain ultimate responsibility for interpreting a regulation." Coluccio Constr., 181 Wn. App. at 36 (citing Children's Hosp. & Med. Ctr. v. Dep't of Health, 95 Wn. App. 858, 864, 975 P.2d 567 (1999)).

Agency regulations are interpreted as if they were statutes. Laser Underground & Earthworks, Inc. v. Dep't of Labor & Indus., 132 Wn. App. 274, 278, 153 P.3d 197 (2006) "As in statutory interpretation, where a regulation is clear and unambiguous, words in a regulation are given their plain and ordinary meaning unless a contrary intent appears." Silverstreak, Inc. v. Dep't of Labor &

Indus., 159 Wn.2d 868, 881, 154 P.3d 891 (2007). "When determining a statute's plain meaning, we consider 'the ordinary meaning of words, the basic rules of grammar, and the statutory context to conclude what the legislature has provided for in the statute and related statutes.'" Darkenwald v. State Emp't Sec. Dep't, 183 Wn.2d 237, 245, 350 P.3d 647 (2015) (quoting In re Forfeiture of One 1970 Chevrolet Chevelle, 166 Wn.2d 834, 838-39, 215 P.3d 166 (2009)).

The purpose of WISHA, as explicitly set forth therein, is to "assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington." RCW 49.17.010. As a remedial statute, WISHA is liberally construed to carry out its purpose. Prezant Assocs., 141 Wn. App. at 7-8 (citing Adkins v. Aluminum Co. of Am., 110 Wn.2d 128, 146, 750 P.2d 1257, 756 P.2d 142 (1988)). Regulations promulgated pursuant to WISHA are also construed in light of WISHA's stated purpose.[5] Prezant Assocs., 141 Wn. App. at 8 (quoting Adkins, 110 Wn.2d at 146).

To effectuate WISHA's purpose, an employer must comply with corresponding regulations. RCW 49.17.060(2). The pertinent WISHA regulations establish that "[i]t shall be the responsibility of management to establish, supervise, and enforce, in a manner which is effective in practice: (a) A safe and healthful working environment." WAC 296-155-100(1)(a). This responsibility includes guarding against temporary conditions "where there is danger of employees or materials falling . . . from . . . open sided floors, open

---

[5] The WAC regulations under which Wright was cited were promulgated pursuant to WISHA.

sides of structures . . . or other open sided walking or working surfaces."[6] WAC 296-155-505(1).[7]

When the surface at issue is an open-sided walking and working surface, the employer must guard such a surface with a guardrail or its equivalent to protect against the danger of falling. A surface is an open-sided surface when it is an "open sided floor, platform or surface four feet or more above adjacent floor or ground level." WAC 296-155-505(6)(a).[8] A surface is a walking or working surface when it is an "area whose dimensions are forty-five inches or greater in all directions, through which workers pass or conduct work." WAC 296-155-24503.[9]

The Board's Decision and Order concluded that the Department failed to present a prima facie case of a violation of WAC 296-155-100(1)(a). The Board's Finding of Fact 2 stated that the placement of a guardrail established a new surface "so that the area between the guardrail and the edge was less than 45 inches wide." From this, in its Conclusion of Law 2, the Board concluded that

---

[6] Wright argues that the Department failed to establish that fall protection was required, stating that WAC 296-155-24510, a fall protection regulation for heights greater than ten feet, exclusively governs fall protection under WISHA and the employees did not work at heights greater than ten feet. We disagree. WAC 296-155-24510 is not the sole provision mandating fall protection be provided to employees. Indeed, this argument ignores both WAC 296-155-505(1) ("This part applies to temporary . . . conditions where there is danger of employees or materials falling.") and WAC 296-155-505(6)(a) ("Every open sided floor, platform or surface . . . shall be guarded by a standard railing, or the equivalent, . . . on all open sides."). WAC 296-155-24510 (2012) as it existed on March 15, 2013, was repealed effective April 1, 2013. All citations to former WAC 296-155-24510 are to the 2012 version.

[7] WAC 296-155-505(1)(a) (2012) as it existed on March 15, 2013, was repealed effective April 1, 2013. All citations to former WAC 296-155-100(1)(a) are to the 2012 version.

[8] The full text of WAC 296-155-505(6)(a) provided: "Guarding of open sided surfaces. (a) Every open sided floor, platform or surface four feet or more above adjacent floor or ground level shall be guarded by a standard railing, or the equivalent, as specified in subsection (7)(a) of this section, on all open sides . . . ."

[9] WAC 296-155-24503 (2012) as it existed on March 15, 2013, was repealed effective April 1, 2013. All citations to former WAC 296-155-24503 are to the 2012 version.

"[t]he Department failed to present a prima facie case that Howard S. Wright Constructors committed a serious violation of WAC 296-155-100(1)(a)." In reaching this conclusion, the Board committed an error of law.

First, the ordinary meaning of WAC 296-155-100(1)(a) and, by implication, WAC 296-155-24503, cannot be construed to support the Board's interpretation. The Board's interpretation erroneously assumes that the text of the safety regulation permitted a guardrail to establish new dimensions for measuring an open-sided walking or working surface. However, such language is conspicuously absent from the regulation.

Indeed, the defining elements of a walking or working surface under WAC 296-155-24503 are those that are plainly stated in the WAC itself, and it has long been understood that "it is safer always not to add to, or subtract from, the language of the statute unless imperatively required to make it a rational statute." McKay v. Dep't of Labor & Indus., 180 Wash. 191, 194, 39 P.2d 997 (1934); accord Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus., 122 Wn. App. 402, 417, 97 P.3d 17 (2004) ("We will not add language to an unambiguous statute."), aff'd, 157 P.2d 90, 135 P.3d 913 (2006). We see no occasion to add language to the already rational safety regulations herein at issue.[10]

Furthermore, the Board's interpretation runs contrary to WISHA's statutory context, namely, WISHA's stated purpose to assure "safe and healthful working

---

[10] Wright, citing to the discussion section of the Board's Decision and Order, argues that the guardrail "changed the nature of the surface" from a "walking/working" surface to one that does not require fall protection. However, the phrase "changed the nature of the surface" does not appear in the text of the applicable regulations and we decline Wright's invitation to add such language and thereby facilitate a result inconsistent with WISHA's purpose.

conditions for every man and woman working in the state of Washington." RCW 49.17.010. If it were otherwise, employers would be allowed to place a guardrail by the edge of an elevated working surface and, in effect, provide employees working on a narrow ledge less safe working conditions than all other employees working and walking on the other side of the guardrail. Such a reading is directly contrary to WISHA's purpose.

Lastly, WISHA, as a remedial statute directed toward worker safety, must be construed to achieve its purpose. Adkins, 110 Wn.2d at 146. Because the Board's interpretation leaves workers less safe, it constitutes a misconstruction of the regulation.

Accordingly, the Board erred in reaching its Conclusion of Law 2 by construing the underlying WISHA regulation in a manner contrary to its plain meaning and its purpose.

C

The Department next contends that, considered under the proper legal framework, substantial evidence supports its citation of Wright for a serious violation. We agree.

Under WISHA, an employer's duty is twofold. Goucher v. J.R. Simplot Co., 104 Wn.2d 662, 671, 709 P.2d 774 (1985). These duties are enumerated in RCW 49.17.060, which contains both a general duty clause and a specific duty clause. J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus., 139 Wn. App. 35, 43, 156 P.3d 250 (2007). "The general duty clause obligates employers to 'furnish to each of his employees a place of employment free from recognized hazards that

are causing or likely to cause serious injury or death to his employees.'" J.E. Dunn, 139 Wn. App. at 43-44 (quoting RCW 49.17.060(1)). "The specific duty clause obligates employers to 'comply with the rules, regulations, and orders promulgated under [WISHA].'" J.E. Dunn, 139 Wn. App. at 44 (quoting RCW 49.17.060(2)).

In addition to the general and specific duties under WISHA and its regulations, "RCW 49.17.180(2) mandates the assessment of a penalty against an employer when a proven violation is 'serious.'" J.E. Dunn, 139 Wn. App. at 44. A "serious" violation of a WISHA regulation is defined as follows:

> [A] serious violation shall be deemed to exist in a workplace if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

RCW 49.17.180(6).

When alleging a violation of WISHA regulations against an employer, the Department bears the initial burden of proving the existence of that violation. WAC 263-12-115(2)(b); J.E. Dunn, 139 Wn. App. at 44. When an alleged violation is designated "serious," the Department bears the burden of proving not only the existence of the elements of the violation itself, but also the existence of those additional elements of a "serious" violation enumerated in RCW 49.17.180(6). J.E. Dunn, 139 Wn. App. at 44 (citing SuperValu, Inc. v. Dep't of Labor & Indus., 158 Wn.2d 422, 433 n.7, 144 P.3d 1160 (2006); Wash. Cedar &

Supply Co. v. Dep't of Labor & Indus., 119 Wn. App. 906, 914, 83 P.3d 1012 (2004)).

Accordingly, to establish its prima facie case in regard to a serious violation of a WISHA regulation, the Department must prove each of the following elements:

> "(1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) 'there is a substantial probability that death or serious physical harm could result' from the violative condition."

Wash. Cedar, 119 Wn. App. at 914 (quoting D.A. Collins Constr. Co. v. Sec'y of Labor, 117 F.3d 691, 694 (2nd Cir. 1997)).

The parties' contentions herein are regarding elements (1) and (5). We address each in turn below.

i

The Department first asserts that the cited standard applies to the alleged violation. As discussed above, the WISHA safety regulation cited by the Department created an overarching duty that required that employers establish a "safe and healthful working environment." WAC 296-155-100(1)(a). This duty extended to providing fall protection in the form of a guardrail or its equivalent in working environments with temporary conditions such as open-sided walking or working surfaces more than four feet off the ground with dimensions greater than forty-five inches in all dimensions.[11] See WAC 296-155-505(1), -505(6)(a), -

---

[11] Wright asserts that it was not feasible to erect a second guardrail. The employer carries the burden to prove the affirmative defense of infeasibility. Coluccio Constr., 181 Wn. App. at 37. Because this argument is not supported by any reference to the record or citation to

24503. Further, as construed herein, WAC 296-155-505(6)(a) and -24503 do not permit an interpretation that allows a guardrail adjacent to an open-sided walking or working surface to impact the Department's measurement of the underlying surface's dimensions.

The Board's Finding of Fact 2 stated:

The surface where [the subcontractor's employees] were working was more than four feet off the ground, and no fall protection system was installed. The surface was part of a larger area that was more than 45 inches in all dimensions, but a guardrail had been placed parallel to the edge, so that the area between the guardrail and the edge was less than 45 inches wide.

Considering the proper construction of WAC 296-155-24503 and the Board's Finding of Fact 2, it is evident that the WAC regulations cited by the Department apply here. Accordingly, the Department proved the first element of its prima facie case.[12]

ii

The Department next asserts that the Board erred by concluding that the violation did not constitute a serious violation. To constitute a serious violation, there must be "a substantial probability that death or serious physical harm could result" from that violation. RCW 49.17.180; Mowat Constr. Co. v. Dep't of Labor

---

authority, we do not consider it. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[12] Wright contends that the Department failed to establish that the surface at issue was a walking or working surface, arguing that "the undisputed testimony" demonstrates that the workers "were not walking to pass from one portion of the building to another" and that, instead, the workers were welding on the outside of the guardrail. This argument misconstrues the pertinent regulation and misstates the record. WAC 296-155-24503 establishes a walking or working surface as one "through which workers pass or conduct work." (Emphasis added.) Because this element of the regulation is framed in the disjunctive, the Department must show that workers either passed through the surface or conducted work on the surface. Here, the Department satisfied both, demonstrating that workers passed through and conducted work on the surface at issue.

-12-

& Indus., 148 Wn. App. 920, 932, 201 P.3d 407 (2009). "'[S]ubstantial probability' does not refer to the probability that harm will occur on a particular work site. Instead, what it refers to is 'the likelihood that, should harm result from the violation, that harm could be death or serious physical harm.'" Mowat Constr., 148 Wn. App. at 932 (quoting Lee Cook Trucking & Logging v. Dep't of Labor & Indus., 109 Wn. App. 471, 482, 36 P.3d 558 (2001)). The harm resulting from a risk of falling may constitute the basis for a serious violation under WISHA. See, e.g., Wash. Cedar, 119 Wn. App. at 916-17 (holding that testimony indicating that a fall could result in "broken or sprained limbs and temporary hospitalization" satisfies the requirement for a serious injury).

In its Conclusion of Law 2, the Board stated that the Department failed to establish that the underlying violation was a serious violation of the WISHA safety regulations. This is so, the Board found, because "[n]o substantial probability existed that the [subcontractor's] employees exposed to the risk of falling . . . would be injured" and, alternatively, if harm resulted, "[n]o substantial probability existed . . . that it would be serious physical harm." Because the Board misapplied the law to the first half of this finding of fact and because the Board's alternative finding was not supported by substantial evidence, its conclusion is in error.

With regard to the first half of the finding, as stated above, the proper inquiry is not into the probability that harm will occur but, rather, into the likelihood that the magnitude of any resulting harm "could be death or serious physical harm." Lee Cook, 109 Wn. App. at 482.

With regard to the second half of the finding, the Board's evaluation goes against the weight of the record. Indeed, a substantial probability existed that serious physical harm could result from Wright's failure to provide adequate fall protection to its subcontractor's employees. Here, the Department established that the workers were welding using arc welders—an activity that presents its own degree of risk—on a one-foot-wide ledge, that the workers were subjected to a potential fall from five feet to seven feet, and that, should they fall, the workers could sustain broken bones and require hospitalization. Accordingly, the Department demonstrated that the violative condition created by Wright presented a substantial probability of serious physical injury to its subcontracting employees.

Thus, the Department established a prima facie case of a serious violation of a WISHA regulation.[13]

III

On appeal, Wright argues that it did not owe a duty to provide a safe and healthful working environment for the subcontractor's employees here at issue. Wright's contention fails.

"RCW 49.17.060(2) imposes on general contractors a nondelegable specific duty to ensure WISHA compliance for the protection of *all* employees on

---

[13] Wright asserts that the Department failed to demonstrate that it did not provide a safe and healthful working environment to its subcontractor's employees, referencing the adequacy of Wright's safety manual, safety orientation, written safety plans, disciplinary program, and hourly safety inspections. Nonetheless, because the Department demonstrated that Wright failed to provide fall protection to the subcontractor's employees on the surface here at issue, the Department met its burden of demonstrating Wright's failure to provide a safe and healthful working environment.

the jobsite." Neil v. NWCC Invs. V, LLC, 155 Wn. App. 119, 125-26, 229 P.3d 837 (2010) (emphasis added) (citing Stute v. P.B.M.C., Inc., 114 Wn.2d 454, 463-64, 788 P.2d 545 (1990)); accord J.E. Dunn, 139 Wn. App. at 48 ("[T]he general contractor at a construction site has a duty to comply with WISHA regulations in regard to its oversight of all employees on the site, not just its own employees."). "The Stute court imposed the per se liability as a matter of policy." Kamla v. Space Needle Corp., 147 Wn.2d 114, 122, 52 P.3d 472 (2002). This per se liability follows from the general contractor's per se control over the workplace. Stute, 114 Wn.2d at 464.

Because Wright was the supervising general contractor on the EMP jobsite, it was required to comply with WISHA regulations as to all employees on its jobsite, not just its own employees.[14] Accordingly, Wright owed a duty to the subcontractor's employees who were found working on the unguarded space that was the subject of the underlying violation. It did not comply with its duty.

## IV

The Board erred by misconstruing pertinent WISHA safety regulations and by concluding that the Department did not establish its prima facie case to support a serious violation citation against Wright. Accordingly, we affirm the superior court, and reverse the Board's decision.

---

[14] Wright further asserts that it owed no duty to the subcontractors on the work site, arguing that it did not retain control over the jobsite or, alternatively, that the surface in question was not a common work area. Both assertions fail. Wright's argument regarding its control of the jobsite conflates the standard applicable to matters that involve jobsite *owners* with matters that involve jobsite *general contractors*. Although the person or entity owning the jobsite is not necessarily always liable for WISHA violations, general contractors do have a duty to comply with WISHA regulations. Afoa v. Port of Seattle, 176 Wn.2d 460, 471, 296 P.3d 800 (2013); accord Stute, 114 Wn.2d at 464.

Affirmed.

We concur: