[No. 61793-7.   En Banc.   October 12, 1995.]

RABBI AVI WEISS, *Appellant*, v. JOZEF CARDINAL GLEMP, *Respondent*.

*Seligmann, Dreiling & Beckerman,* by *Eugene D. Selig-mann* and *Willard G. Smith, Jr.,* for appellant (counsel for appeal only).

*Oles, Morrison & Rinker,* by *John Lukjanowicz, Arthur D. McGarry,* and *Richard T. Black,* for respondent.

DURHAM, C.J. — Rabbi Avi Weiss alleges that Jozef

Cardinal Glemp defamed him during a sermon in Poland in 1989. Weiss is a resident of New York, and Glemp is a resident of Poland. After unsuccessfully pursuing a claim in Poland, Weiss brought an action for defamation in New York, and attempted to serve Glemp at a religious procession in Albany, New York. However, the action was dismissed for insufficiency of process. In 1993, Glemp made a three-day pastoral visit to Seattle. This defamation action was filed in King County during that visit. Glemp moved to dismiss for lack of personal jurisdiction, and the motion was granted. We accepted direct review, and affirm the trial court's dismissal, although on different grounds.

## FACTS

Rabbi Weiss is a resident of New York and Cardinal Glemp is a resident of Poland.[1] In July 1989, Weiss and six of his students traveled to Poland to protest the continued use of a building on the outskirts of the Auschwitz concentration camp as a convent for an order of cloistered nuns. Weiss and the students climbed over a seven-foot fence surrounding the convent and staged a nonviolent protest by praying on the steps of the convent for five hours. They were then forcibly ejected by maintenance workers at the convent.

A month later, Glemp delivered a sermon at a Polish shrine before some 100,000 people. *See Weiss*, 792 F. Supp. at 230-34 (providing text of sermon translated by CNS Documentary Service). In the course of the sermon, Glemp referred to the recent events at the convent. After remarking that the nuns were at Auschwitz as "a sign of that human solidarity which includes the living and the dead," Glemp stated:

> Recently, a detachment of seven Jews from New York attacked the convent at Auschwitz. To be sure, because they

---

[1]A detailed factual background is provided in the federal district court case relating to this dispute, *Weiss v. Glemp*, 792 F. Supp. 215 (S.D.N.Y. 1992) (dismissing for insufficiency of process).

were restrained, it did not result in the killing of the sisters or the destruction of the convent; but do not call the aggressors heroes.

*Weiss*, 792 F. Supp. at 217. The language was quoted or paraphrased the following month in *Time, Newsweek*, and the *New York Times*. Those publications have significant circulation in Washington state.

In October 1993, Glemp made a three-day pastoral visit to Seattle. On October 28, 1993, Weiss filed the present action against Glemp in King County Superior Court. The next morning, a legal messenger went to the rectory where Glemp was staying to serve the summons and complaint. The messenger and a Polish interpreter knocked on the door and told the woman who answered that they were looking for Glemp. The woman went into a neighboring room and returned with a priest. The priest informed them that Glemp was having breakfast and asked them to return later. The messenger responded that he had "important legal documents . . . and it would only take a second to make the delivery." Clerk's Papers at 33. The priest asked them to wait and returned with a second priest who identified himself in English as Glemp's secretary. The messenger told him they had legal documents for Glemp and would like to see him. The secretary said Glemp was not available, was not a citizen, and was not subject to this country's laws. The messenger responded that was irrelevant and that he just wanted to deliver the documents to Glemp. The secretary asked the messenger and interpreter to leave, and they left.

The two waited outside the building for Glemp to leave so they could serve him. While they waited, they could see Glemp through a large plate glass window. After about two hours, the messenger approached the window. Holding the documents high in his hand, the messenger yelled, "Jozef Glemp, Oficjaline dostarcham [official documents]! Jozef Glemp[,] you have been served!" Clerk's Papers at 34. As he yelled, Glemp looked over his shoulder at the messenger. They then placed the documents on a concrete windowsill about four feet from where Glemp was sitting.

Glemp filed no answer to the complaint. In February 1994, Weiss moved for entry of a default judgment. Glemp moved for judgment on the pleadings under CR 12(b)(6) on the grounds that the suit was barred by the statute of limitation, that service of process was insufficient, that the assertion of personal jurisdiction over him would violate due process, and that the doctrines of forum non conveniens and res judicata required dismissal.

The trial court granted Glemp's motion to dismiss for lack of personal jurisdiction. The court ruled that assertion of jurisdiction would violate due process under the traditional "minimum contacts test." The court believed the test had not been altered by the Supreme Court's 4-4-1 plurality opinion construing transiently present defendants. *See Burnham v. Superior Court*, 495 U.S. 604, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (1990). However, the court denied defendant's motion with respect to (1) the insufficiency of service of process, (2) the statute of limitation, (3) forum non conveniens, and (4) the res judicata or collateral estoppel effect of the prior Polish proceedings.

■■ We have frequently stated that "we will not decide a constitutional issue unless it is absolutely necessary for the determination of a case." *State v. Zakel*, 119 Wn.2d 563, 567, 834 P.2d 1046 (1992). The personal jurisdiction issue in this case hinges on a constitutional due process question. *See generally Burnham v. Superior Court* (4-4-1 plurality decision). The trial court granted dismissal on the due process issue. However, the pleadings below raised other issues, including insufficiency of process. An appellate court can sustain a trial court judgment on any theory established by the pleadings and proof, even if the trial court did not consider it. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 557 n.10, 852 P.2d 295 (1993). Because we conclude that service of process was insufficient, we do not reach the jurisdictional and other issues. In so doing,

however, we acknowledge the thoughtful and well-reasoned treatment of the issues by the trial court.

## INSUFFICIENCY OF PROCESS

The Washington service statute requires that:

The summons shall be served by delivering a copy thereof, as follows:

. . .

(15) In all other cases, to the defendant personally, or by leaving a copy of the summons at the house of his usual abode with some person of suitable age and discretion then resident therein.

RCW 4.28.080(15). This provision has two components. One provides for personal service ("to the defendant personally"); the other provides for substitute service (a copy left with someone of suitable age and discretion then in residence). *See Wichert v. Cardwell*, 117 Wn.2d 148, 150, 812 P.2d 858 (1991) (construing the substitute service of process portion of the provision, and holding twenty-six-year-old nonresident daughter who had stayed at the house the night before was "then resident therein.")

■ Without question, the service here failed to comply with the specific terms of the statute, since the process server did not deliver the summons to Glemp personally, nor leave it with someone of suitable age and discretion where Glemp was staying.[2]

Weiss contends the windowsill service substantially complies with the service statute. We disagree.

"Substantial compliance has been defined as actual compliance in respect to the substance essential to every reasonable objective of [a] statute." *In re Santore*, 28 Wn. App. 319, 327, 623 P.2d 702, *review denied*, 95 Wn.2d 1019 (1981) (citing *Stasher v. Harger-Haldeman*, 58 Cal. 2d 23, 29, 372 P.2d 649, 22 Cal. Rptr. 657 (1974)). In the cases where substantial compliance

---

[2]We need not decide, of course, whether a three-day temporary residence qualifies as a "usual abode" under the statute.

has been found, there has been actual compliance with the statute, albeit procedurally faulty.

*Seattle v. Public Employment Relations Comm'n*, 116 Wn.2d 923, 928, 809 P.2d 1377 (1991). We need not decide the applicability of substantial compliance to the service statute. We find that service in this case failed to comply with even the rudiments of the statutory requirements.

■■ In the present case, the process server did not leave the summons with *anyone*. It was left on an outside windowsill. The summons was not left with either the Respondent or a person of suitable age and discretion, such as Glemp's secretary who came to the door. That is noncompliance with the statute, not significant compliance combined with a merely technical deficiency. Moreover, even if we were to apply the doctrine of substantial compliance to the service of process statute, an essential objective of the statute is the requirement that process be actually delivered to a responsible person.

We have previously interpreted the statute in light of the purpose of service, which includes providing notice to the defendant. *Wichert*, 117 Wn.2d at 151-53. Contrary to Weiss's assertion, *Wichert* did not use the phrase "substantial compliance." Only the precise meaning of the phrase "then resident therein," was at issue.

> Three separate elements must be satisfied to constitute such service: (1) a copy of the summons must be left at the house of defendant's usual abode, (2) with some person of suitable age and discretion, (3) then resident therein. *Only element (3) is at issue.*

*Wichert*, 117 Wn.2d at 150 (emphasis added). In determining the meaning of that phrase, we observed that effecting the legislative purpose was the relevant rule of statutory construction. *Wichert*, 117 Wn.2d at 151.

Statutory construction is appropriate where a term is ambiguous, as was the phrase "then resident therein" in *Wichert*. This does not mean, however, that *Wichert* sanc-

tions noncompliance with an unambiguous statute. Weiss does not assert there is anything ambiguous about the legislative command that "[t]he summons shall be served by delivering a copy thereof . . . to the defendant personally." RCW 4.28.080(15). Nothing in *Wichert* supports the proposition that the doctrine of substantial compliance applies to the service of process statute.[3]

Weiss cites a Court of Appeals case as holding that substantial compliance applies to the service statute. *Thayer v. Edmonds*, 8 Wn. App. 36, 503 P.2d 1110 (1972), *review denied*, 82 Wn.2d 1001 (1973). *Thayer* involved a process server who arrived at the defendant's house at ten minutes to midnight on the last day of a three-year statute of limitation. The server left the summons in the door. The defendant had agreed to receive process by placement of the summons in the front door in an earlier phone call. *Thayer*, 8 Wn. App. at 40-41. While the court used the phrase "substantial compliance," *Thayer*, 8 Wn. App. at 42, the court limited its holding to the highly unusual circumstances of that case.

> Under the circumstances, we think [the defendant's] statement constituted an authorization to leave the process in the door. . . . [W]e can discern no reason of public policy why a defendant should not be able to authorize delivery in a manner not enumerated in the statute . . .

*Thayer*, 8 Wn. App. at 41-42. *See also Thayer*, 8 Wn. App. at 39 (relying on *Lee v. Barnes*, 58 Wn.2d 265, 362 P.2d 237 (1961), "where an agreement for a method of substituted service was upheld, even though such method was not expressly authorized by the statute.") *Thayer*'s holding on a defendant's ability to *consent* to nonstatutory modes of service does not mean failure to comply with the express wording of the statute can be ignored where consent is absent.

---

[3] *Wichert* construes *substitute* service. 117 Wn.2d at 152. Leaving the summons on the windowsill is not a form of substitute service. The statute requires leaving the summons with a substitute *person* of suitable age and discretion, not a substitute place. RCW 4.28.080(15).

■ Weiss next argues the windowsill service was constitutionally adequate, since it was reasonably calculated to provide notice to the defendant. *See Wichert*, 117 Wn.2d at 150-51. Nevertheless, there is a difference between constitutionally adequate service and service required by the statute: "[B]eyond due process [requirements], statutory service requirements must be complied with in order for the court to finally adjudicate the dispute between the parties." *Thayer*, 8 Wn. App. at 40.

■ Finally, Weiss asserts Glemp attempted to evade process because he did not come to the door.[4] However, failing to come to the door does not constitute evasion of service. As *Thayer* noted, "We wish to emphasize that those who are to be served with process are under no obligation to arrange a time and place for service or to otherwise accommodate the process server." *Thayer*, 8 Wn. App. at 42.

The trial court's dismissal is affirmed.

DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and PEKELIS, JJ., concur.

TALMADGE, J. (concurring) — I agree with the analysis set forth in the majority opinion. I write separately to emphasize my view expressed in *Union Bay Protection Coalition v. Cosmos Dev. & Admin. Corp.*, 127 Wn.2d 614, 902 P.2d 1247 (1995), that the doctrine of substantial compliance does not apply in cases involving original service of process. I continue to believe that the simpler and more appropriate rule for service of process is that where original service of process is involved, strict compliance is required. As the plaintiff here did not strictly comply with

---

[4]Weiss alleges that Glemp evaded service in New York by "hid[ing] behind a phalanx of priests." Br. of Appellant at 22. He also quotes the federal district court in the New York case as finding Glemp had a proclivity for "attempt[ing] to evade service." Appellant's Reply Br. at 21. This assertion is contrary to the findings of the federal district court. *Weiss v. Glemp*, 792 F. Supp. 215, 223 (S.D.N.Y. 1992) ("Nor does the evidence support Plaintiff's suggestion that Cardinal Glemp was trying to evade service during his visit to Albany.")

the provisions of RCW 4.28.080(15), service was not properly accomplished in this case.