IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN RE DEPENDENCY OF A.P. | ) | |
| | ) | No. 30925-8-III |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | PUBLISHED OPINION |
| | ) | |
| | ) | |

FEARING, J. —

## INTRODUCTION AND RULING

The state of Washington, through the Department of Social and Health Services

(DSHS), filed a petition alleging that the child A.P. was a dependent of the State. DSHS

asserted that A.P. was abused or neglected, as defined by the dependency statutes, and

had no parent capable of caring for her. A.P.'s mother, B.P., successfully opposed the

dependency and retained custody of her daughter. Upon a ruling in her favor from the

superior court, B.P. sought an award of reasonable attorney fees and costs, under RCW

4.84.350, Washington's equal access to justice act (WEAJA). In short, the WEAJA

No. 30925-8-IIII
*In re Dependency of A.P.*

other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified." RCW 4.84.350. The superior court denied the motion based on its understanding that RCW 4.84.350 provides for attorney fees only on judicial review of rulemaking and adjudicative proceedings governed by the Administrative Procedure Act (APA), chapter 34.05 RCW. B.P. appeals, arguing that the meaning of "agency action" as used in RCW 4.84.350 extends beyond rulemaking and agency adjudication. We affirm the superior court on the ground that this dependency action does not constitute "judicial review" of an agency action.

## FACTS

This case presents a single question of law for review. As such, the facts of this case are largely irrelevant, although the facts include more than the background to the dependency petition.

A.P., born in 2009, is the daughter of the formerly married couple, B.P. and B.M.P. In 2011, B.M.P. filed for divorce in Lincoln County. Since the parties have separated, B.P. has been the primary caregiver for A.P.

On December 27, 2011, A.P. suffered a bruise on her face. Confusion exists as to whether the bruise resulted from A.P.'s fall on an icy sidewalk or from a slap by B.P.'s boyfriend. B.P. broke off contact with the boyfriend. She relayed her concerns about the

2

bruise and her possible overreaction to the injury to her counselor, who reported the event to Child Protective Services (CPS).

On January 10, 2012, CPS gathered a family team decision meeting among a CPS facilitator, B.M.P., B.P., and B.P.'s attorney. CPS encouraged B.P. to place A.P. in the care of B.M.P., but B.P. refused.

On January 12, B.M.P. obtained a temporary restraining order, without notice to B.P. or her counsel, preventing B.P. from contact with A.P., effectively placing custody of the child with B.M.P. In support of the order, B.M.P. averred, "CPS advised me to get emergency protection for my daughter as soon as I could. They are working to give me full custodial rights." Clerk's Papers at 141. B.P. immediately moved to quash the order and a hearing was scheduled for January 17. In opposition to the motion to quash and in support of continuing the restraining order, a CPS social worker signed a declaration. The Lincoln County Superior Court granted the motion to quash and returned custody to B.P.

On January 18, DSHS filed this dependency action, along with a motion for shelter care, with the Spokane County Superior Court. B.P. successfully gained an order transferring the action to Lincoln County, the situs of the divorce proceeding. On February 28, the Lincoln County Superior Court summarily dismissed the dependency

3

petition because of insufficient facts. B.P. then unsuccessfully sought an award of reasonable attorney fees and costs under RCW 4.84.350.

## ISSUE

Whether a dependency action in superior court constitutes "judicial review" of an "agency action" within the meaning of RCW 4.84.350? We answer in the negative.

## ANALYSIS

In 1995, the Washington State Legislature passed the WEAJA, RCW 4.84.340-.360. LAWS OF 1995, ch. 403, §§ 901-904. The WEAJA, modeled after the federal equal access to justice act, 28 U.S.C. § 2412, permits a court to award reasonable attorney fees and costs to a prevailing party who filed suit to oppose unlawful agency action. The WEAJA is a section of a broader enactment creating regulatory reform. LAWS OF 1995, ch. 403. In § 901 of the enactment, the legislature divulges the purpose behind the WEAJA:

> The legislature finds that certain individuals, smaller partnerships, smaller corporations, and other organizations may be deterred from seeking review of or defending against an unreasonable agency action because of the expense involved in securing the vindication of their rights *in administrative proceedings.* The legislature further finds that because of the greater resources and expertise of the state of Washington, individuals, smaller partnerships, smaller corporations, and other organizations are often deterred from seeking review of or defending against state agency actions because of the costs for attorneys, expert witnesses, and other costs. The legislature therefore adopts this equal access to justice act to ensure that these parties have a greater opportunity to defend themselves from inappropriate state agency actions and to protect their rights.

4

No. 30925-8-IIII
*In re Dependency of A.P.*

LAWS OF 1995, ch. 403, § 901 (emphasis added).

The key provision of the WEAJA, RCW 4.84.350, reads in pertinent part:

(1) Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in *a judicial review of an agency action* fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.
(2) The amount awarded a qualified party under subsection (1) of this section shall not exceed twenty-five thousand dollars.

(Emphasis added.) "Agency," "agency action," "judicial review," and "qualified party,"

are incompletely defined in RCW 4.84.340. This definitional statute reads:

Unless the context clearly requires otherwise, the definitions in this section apply throughout RCW 4.84.340 through 4.84.360.
(1) "Agency" means any state board, commission, department, institution of higher education, or officer, authorized by law to make rules or to conduct adjudicative proceedings, except those in the legislative or judicial branches, the governor, or the attorney general except to the extent otherwise required by law.
(2) "Agency action" means agency action as defined by chapter 34.05 RCW.
. . . .
(4) "Judicial review" means a judicial review as defined by chapter 34.05 RCW.
(5) "Qualified party" means (a) an individual whose net worth did not exceed one million dollars at the time the initial petition for judicial review was filed.

The question of whether DSHS is an "agency" for purposes of the WEAJA is not

at issue. DSHS has been ordered to pay attorney fees under the WEAJA. *See, e.g.,*

5

*Freeman v. Dep't of Soc. & Health Servs.*, 173 Wn. App. 729, 749-50, 295 P.3d 294 (2013); *Conway v. Dep't of Soc. & Health Servs.*, 131 Wn. App. 406, 420-21, 120 P.3d 130 (2005). Whether B.P. is a "qualified party" is also not at issue. We focus our attention on the phrase "judicial review."

"We review the meaning of a statutory definition de novo, as an issue of law." *State v. Johnson*, 132 Wn. App. 400, 406, 132 P.3d 737 (2006). "The court's duty in statutory interpretation is to discern and implement the legislature's intent." *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). "Where the plain language of a statute is unambiguous and legislative intent is apparent, we will not construe the statute otherwise." *Id.* "Plain meaning may be gleaned 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" *Id.* (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

RCW 4.84.340 directs us to find the definition of "agency action" and "judicial review," in the APA. The APA defines "[a]gency action" as "licensing, the implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the granting or withholding of benefits." RCW 34.05.010(3). Nowhere does chapter 34.05 RCW, the state APA, define "judicial

6

review." *Costanich v. Dep't of Soc.& Health Servs.*, 164 Wn.2d 925, 930, 194 P.3d 988 (2008).

One Washington case partially defined "judicial review," for purposes of RCW 4.84.350. In *Cobra Roofing*, the Supreme Court addressed whether the WEAJA applied when a party prevails at the agency level. *Cobra Roofing Servs., Inc. v. Dep't of Labor & Indus.*, 157 Wn.2d 90, 100, 135 P.3d 913 (2006). Answering that question, the court held that "judicial review" under both the WEAJA and the APA means court review; thus the WEAJA did not apply to fees incurred at the agency level. *Id. Cobra Roofing* supports our conclusion, but does not fully answer our question. The decision equated "judicial review" with nonagency review by an elected judge, but did not directly answer the question of what is "review" and whether the term "review" may encompass original actions filed by an agency in superior court.

"The fact that a word is not defined in a statute does not mean the statute is ambiguous. Rather, an undefined term should be given its plain and ordinary meaning unless a contrary legislative intent is indicated." *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998). The dictionary defines "judicial review" as "a constitutional doctrine that gives to a court system and esp. to a supreme court the power to annul legislative or executive acts which the judges declare are contrary to the provisions of the constitution." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY

7

1223 (1993). This ordinary meaning of the term "judicial review" does not apply in this context, because the WEAJA is concerned with overturning agency action regardless of the constitutionality of the action.

Where a term does not have a plain and ordinary meaning, the courts apply the canon of *noscitur a sociis*, Latin for gleaning the meaning of a term by the words that surround it and the context in which it is used. *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 601, 278 P.3d 157 (2012). Upon studying the words and other provisions of the APA that surround the term "judicial review," we conclude that the term is limited to court review of agency actions under RCW 34.05.570 and does not encompass original actions filed by an agency in superior court. Throughout the APA, the term "judicial review" is accompanied by the term "civil enforcement." RCW 34.05.010(13) defines the term "[p]arty to judicial review or civil enforcement proceedings." Part V of the APA is entitled "Judicial Review and Civil Enforcement." The legislature would not have identified both "judicial review" and "civil enforcement" if the two were identical concepts. Within Part V, RCW 34.05.570 is entitled "judicial review" and RCW 34.05.578 is captioned "petition by agency for enforcement." Notably, subsection .570 deals solely with lawsuits filed by aggrieved parties against an agency and subsection .578 addresses only lawsuits filed by agencies. The context in which these terms are used

8

implies that, when an agency files a lawsuit, the suit is an "enforcement proceeding" and not the initiation of "judicial review" as contemplated by the WEAJA.

Common usage of word "review" by a court implies the agency already completed its adjudication. Indeed, the word "review" means "to examine again." WEBSTER'S, *supra*, at 1944. The filing of a dependency action in a court is not review of a past administrative action; rather, it is an original action being judged and assessed in the first instance.

Although no appellate opinion has explicitly analyzed the term "judicial review" in our setting, historical application of the WEAJA helps circumscribe the term. Notably, out of the 81 published decisions[1] involving the WEAJA, no case involves an agency initiated civil proceeding in a court.

The purpose section of the WEAJA supports, in part, B.P.'s broad view of the Act as advocating an equal litigation field for parties litigating, in all contexts, against the state of Washington, with its vast resources. The findings section provides a specific reference to the contrary, however, with its use of the clause "vindication of their rights in administrative proceedings." LAWS OF 1995, ch. 403, § 901. This pending lawsuit is not an administrative proceeding. The legislature's referral, in the WEAJA, to the state APA for defining terms, also confirms the view that the private party must be appealing

---

[1] *See* RCW 4.84.340 -.350.

from an administrative action, under the APA, in order to obtain fees, rather than the state initiating suit in court.

Finally, B.P. cites to federal case law to argue that the legislature intended for WEAJA to extend to civil proceedings. WEAJA is patterned after the federal equal access to justice act. *Plum Creek Timber Co., L.P. v. Wash. Forest Practices Appeals Bd.*, 99 Wn. App. 579, 595, 993 P.2d 287 (2000). B.P.'s reliance on federal law, however, harms rather than benefits her, since she overlooks the federal equal access to justice act language explicitly extending its scope to civil enforcement proceedings, language absent in the WEAJA. The federal statute reads: attorney fees "may be awarded to the prevailing party *in any civil action brought by or against the United States or any agency.*" 28 U.S.C. § 2412(a)(1) (emphasis added). The Washington legislature could have, but chose not to, adopt the federal language, which bolsters our conclusion that the WEAJA does not allow an award of fees in litigation begun by the state.[2]

Because we conclude that a parental rights termination suit does not comprise "judicial review," we need not ask if the suit constitutes "agency action." DSHS contends that B.P. is not entitled to fees because the state's actions were "substantially

---

[2] We question whether a dependency action would be considered a civil enforcement proceeding anyway, since an enforcement proceeding assumes that the agency previously conducted adjudication within the agency, and the agency now seeks to enforce its ruling. DSHS initiates a dependency action without a prior hearing or ruling within the agency.

10

No. 30925-8-IIII
*In re Dependency of A.P.*

justified," within the meaning of RCW 4.84.350.  We need not address this contention

since we deny fees on another ground.

Affirmed.

Fearing, J.

WE CONCUR:

Korsmo, C.J.

Brown, J.

11