# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SOLVAY CHEMICALS, INC, | No. 50103-1-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | PUBLISHED OPINION |
| Respondent. | |

MELNICK, J. — Solvay Chemicals, Inc. appeals the trial court's order granting summary judgment to the Washington State Department of Revenue (DOR). Solvay claims that the manufacturing machinery and equipment (M&E) exemption from sales tax applies to its purchases of chemicals to create a "working solution" essential to its production of hydrogen peroxide. We reverse the trial court and remand for entry of summary judgment for Solvay because the chemicals at issue meet the definition of "machinery and equipment" under the M&E exemption.

FACTS

I.   HYDROGEN PEROXIDE PRODUCTION

Solvay operates a chemical manufacturing plant in Longview that manufactures hydrogen peroxide for sale. Integral to its production is a "working solution" composed of diisobutyl carbinal (DC), aromatic solvent G (ASG), and amyl-anthraquinone[1] (AQ). AQ is the critical

---

[1] Throughout the record, amyl-anthraquinone is sometimes referred to as "anthraquinone" or just "quinone." These appear to be different varieties of the same substance and the specific name does not change its role in the process of hydrogen peroxide production. We refer to it generally as AQ.

ingredient for the creation of hydrogen peroxide, while the DC and ASG ensure the solution maintains the appropriate physical properties for resolution of the required chemical reactions. The taxation of Solvay's purchases of DC and ASG are at issue in this case.

The production of hydrogen peroxide requires three distinct steps: hydrogenation, oxidation, and extraction. The working solution makes a complete circuit through these steps to create hydrogen peroxide. It is then circulated back to the first step and the circuit begins anew. The working solution is removed from the plant only for maintenance or special projects. Although no part of the working solution becomes any part of the final product, the working solution may be thought of as "a liquid catalyst in that [it] provide[s] a reactive surface for combination of the atoms/molecules that will become the final product." CP at 12.

The Longview plant as a whole maintains approximately 210,000 gallons of working solution at any given time. It consists of approximately 15 percent DC, 50 percent ASG, and 35 percent AQ. The relative proportions of the three components remain consistent throughout the entire hydrogen peroxide manufacturing process.

During normal operation of the plant, some working solution is lost as it is piped through the various processes outlined above. On a weekly basis, some quantity of working solution also becomes contaminated and unusable. The plant loses approximately 900 to 1,000 gallons of working solution per week. Solvay samples and monitors the solution approximately twice a week to ensure that it maintains the proper proportions of each chemical. It is topped off about once per week.

Solvay usually purchases ASG and AQ pre-mixed together. It then adds additional ASG to reach the proportions it needs to create the working solution. Solvay usually makes two purchases of ASG per year, each of about 6,500 gallons. It makes four purchases of DC per year of an unknown quantity.

A Solvay employee stated in a declaration that "[t]he working solution is a functional part of the reaction vessels and the reaction vessels cannot not [sic] operate without being filled with working solution." CP at 207. He also stated that "[o]nce the working solution has been injected into the loop it has a useful life of approximately 4.5 years." CP at 209.

II.    LITIGATION

In 2013, DOR audited Solvay for a period beginning in 2008 and ending in 2011. As a result, it calculated that Solvay owed $113,350 in "use tax and/or deferred sales tax" on DC and ASG it had purchased for use in its working solution. CP at 13.

Solvay appealed DOR's assessment to the DOR appeals division, which affirmed. In December 2014, Solvay paid the taxes assessed against it and filed a complaint in the Thurston County Superior Court for a refund of those taxes.

In December 2016, DOR issued a discovery request to Solvay, requesting copies of exemption certificates[2] it had provided to sellers when purchasing ASG and DC. In February 2017, Solvay produced ten exemption certificates, all signed in February 2017, for purchases it made between January 2008 and November 2012.

---

[2] The M&E exemption requires sellers to obtain exemption certificates for tax exempt sales and keep them in their files. RCW 82.08.02565(1)(b).

Both parties moved for summary judgment on the issue of whether DC and ASG qualify as "machinery and equipment" under the M&E exemption. The trial court denied Solvay's motion and granted DOR's. Solvay appeals.

## ANALYSIS

We review summary judgment orders de novo, performing the same inquiry as the trial court. *Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). "Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 797, 123 P.3d 88 (2005).

I.      MACHINERY AND EQUIPMENT

Solvay contends that the working solution qualifies for the M&E tax exemption because it is the primary fixed asset Solvay uses in its manufacture of hydrogen peroxide and is part of the "machinery and equipment" of the plant.[3] DOR responds that chemicals mixed together for purposes of chemical manufacturing are not "machinery and equipment" under a "logical, common sense interpretation" of those terms. Br. of Resp't at 9. It contends that Solvay's interpretation of "machinery and equipment" is overbroad and should be rejected. We agree with Solvay.

---

[3] Throughout its briefing and argument, Solvay argues that the working solution itself qualifies for the M&E exemption. However, as DOR emphasizes, the summary judgment order ruled on the applicability of the exemption to Solvay's purchases of the component chemicals of the working solution, ASG and DC. Because "ingredients" or "components" of "machinery and equipment" are themselves "machinery and equipment," we assess whether the working solution itself meets the statutory definition. RCW 82.08.02565(2)(a).

4

A.    LEGAL PRINCIPLES

We review questions of statutory interpretation de novo.  *Williams v. Tilaye*, 174 Wn.2d 57, 61, 272 P.3d 235 (2012).  In interpreting statutes, our goal is to "ascertain and carry out the legislature's intent."  *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014).  We give effect to the plain meaning of the statute as "derived from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'"  *Jametsky*, 179 Wn.2d at 762 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

If a statute's meaning is plain on its face, we give effect to that meaning as an expression of legislative intent.  *Blomstrom v. Tripp*, 189 Wn.2d 379, 390, 402 P.3d 831 (2017).  If, "after this inquiry, the statute remains ambiguous or unclear, it is appropriate to resort to canons of construction and legislative history."  *Blomstrom*, 189 Wn.2d at 390.  If the statute "uses plain language and defines essential terms, the statute is not ambiguous."  *Regence Blueshield v. Office of the Ins. Comm'r*, 131 Wn. App. 639, 646, 128 P.3d 640 (2006).  "A statute is ambiguous if 'susceptible to two or more reasonable interpretations,' but 'a statute is not ambiguous merely because different interpretations are conceivable.'"  *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009) (quoting *State v. Hahn*, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)).

We construe "'a tax exemption statute that creates doubt or ambiguity' strictly '*against the taxpayer*,' 'though fairly and in keeping with the ordinary meaning of [its] language.'"  *N. Cent. Wash. Respiratory Care Servs., Inc. v. Dep't of Revenue*, 165 Wn. App. 616, 625, 268 P.3d 972 (2011) (quoting *Sacred Heart Med. Ctr. v. Dep't of Revenue*, 88 Wn. App. 632, 637, 946 P.2d 409 (1997) (internal quotation marks omitted)).

RCW 82.08.02565(1)(a) provides that retail sales tax does not apply "to sales to a manufacturer or processor for hire of machinery and equipment used directly in a manufacturing operation." When the legislature has defined a term, "the statutory definition of a term 'controls its interpretation.'" *Senate Republican Campaign Comm. v. Pub. Disclosure Comm'n*, 133 Wn.2d 229, 239, 943 P.2d 1358 (1997) (quoting *State v. Morris*, 77 Wn. App. 948, 950, 896 P.2d 81 (1995)). The statute defines "machinery and equipment" to mean "industrial fixtures, devices, and support facilities, and tangible personal property that becomes an ingredient or component thereof, including repair parts and replacement parts." RCW 82.08.02565(2)(a).

Several specific types of property are expressly excluded from the definition of "machinery and equipment," including buildings, building fixtures that are not integral to the manufacturing operation, hand-powered tools, and property with a useful life of less than one year. RCW 82.08.02565(2)(b).

B. DEVICE

Solvay contends that the plain meaning of the statutory text supports its reading that the working solution is included within "machinery and equipment." It claims that its working solution is both an "industrial fixture"[4] and a "device" and that it falls under the plain meaning of "equipment." Solvay further contends that DOR regulatory definitions support its reading of the statute.[5] We agree.

---

[4] Because we conclude that Solvay's working solution is a "device" under the exemption, we do not reach the question of whether it is an "industrial fixture."

[5] Solvay additionally contends that the specific statutory exclusions of items, such as buildings or items with a useful life of less than a year, indicates that the legislature intended a broad interpretation that could include buildings, as otherwise there would be no need to exclude them. Whether or not the legislature intended certain buildings to qualify as "machinery and equipment" does not influence whether it intended the statute to include chemicals.

"Machinery and equipment" means "industrial fixtures, devices, and support facilities, and tangible personal property that becomes an ingredient or component thereof, including repair parts and replacement parts." RCW 82.08.02565(2)(a). Solvay contends that its working solution is a "device."

"Device" is not further defined by statute. It is, however, defined by a DOR regulation as "an item that is not attached to the building or site." WAC 458-20-13601(2)(c) (Rule 13601). Where statutory language is plain and unambiguous, we will glean the legislative intent from the words of the statute itself, regardless of a contrary interpretation by an administrative agency. *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005). However, if a statute is ambiguous, "an agency's promulgated rules help our interpretation because they 'fill in the gaps where necessary to the effectuation of a general statutory scheme.'" *Quinault Indian Nation v. Imperium Terminal Servs., LLC*, 187 Wn.2d 460, 474, 387 P.3d 670 (2017) (quoting *Hama Hama Co. v. Shorelines Hr'gs Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975) (internal quotation marks omitted)). We consider both the plain meaning of the statutory text and DOR's regulatory definition.

### 1. Dictionary Definition

"'[A]n undefined term should be given its plain and ordinary meaning unless a contrary legislative intent is indicated.'" *In re Dependency of A.P.*, 177 Wn. App. 871, 877, 312 P.3d 1013 (2013) (quoting *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998)). To determine the plain meaning of an undefined term, we look to the dictionary. *HomeStreet, Inc.*, 166 Wn.2d at 451. We also consider how a statutory term is commonly understood. *Bowie v. Dep't of Revenue*, 171 Wn.2d 1, 12-13, 248 P.3d 504 (2011).

The dictionary defines "device" as "something that is formed or formulated by design" or "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." WEBSTER'S THIRD NEW INT'L DICTIONARY 618 (1961). "Equipment" is further defined as "all the fixed assets other than land and buildings of a business enterprise" or "the implements (as machinery or tools) used in an operation or activity." WEBSTER'S THIRD NEW INT'L DICTIONARY 768.

The working solution is a chemical formed or formulated by design to cause specific chemical reactions to occur. The working solution also meets the broad dictionary definition of equipment that is designed to serve a special purpose or perform a special function.[6] Accordingly, the working solution fits within the definition of "device."

### 2.     Regulatory Definition

We give "great weight to the statutory interpretation laid down by the executive agency charged with [a statute's] enforcement." *Regence Blueshield*, 131 Wn. App. at 646. However, the "agency's interpretation is not conclusive because 'it is ultimately for the court to determine the purpose and meaning of statutes, even when the court's interpretation is contrary to that of the agency charged with carrying out the law.'" *Puget Sound Med. Supply v. Dep't of Soc. & Health Servs.*, 156 Wn. App. 364, 369, 234 P.3d 246 (2010) (quoting *Overton v. Wash. State Econ. Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981)). We apply normal rules of statutory construction to administrative rules and regulations. *Quinault Indian Nation*, 187 Wn.2d at 474.

---

[6] Both parties also provide dictionary definitions and analysis into the proper interpretation of the terms "machinery" and "equipment." However, "[o]nly where a term is undefined will it be given its plain and ordinary meaning." *United States v. Hoffman*, 154 Wn.2d 730, 741, 116 P.3d 999 (2005); *see also Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 220, 11 P.3d 762 (2000). Because the term "machinery and equipment" is defined by statute, we use its statutory definition.

The agency regulations in this case define "device" as "an item that is not attached to the building or site." Rule 13601(2)(c). The DOR regulation also provides a list of examples of "devices," including "[f]orklifts, chainsaws, air compressors, clamps, free standing shelving, software, ladders, wheelbarrows, and pulleys." Rule 13601(2)(c).

To determine the plain meaning of an undefined term, we look to the dictionary. *HomeStreet, Inc.*, 166 Wn.2d at 451. The dictionary provides an extensive list of definitions of "item." WEBSTER'S THIRD NEW INT'L DICTIONARY 1203. Some relevant definitions include: "something that forms a contributory or component part or section of something specified," and "an individual thing (as an article of household goods, an article of apparel, an object in an art collection, a book in a library) singled out from an aggregate of individual things." WEBSTER'S THIRD NEW INT'L DICTIONARY 1203. Black's Law Dictionary defines "item" as "[a] piece of a whole, not necessarily separated." BLACK'S LAW DICTIONARY 850 (8th Ed. 2004).

The working solution meets the regulatory definition of "device" as an item that forms a contributory part of the working solution loop and is not attached to the building or site. "When faced with general terms in a sequence with specific terms, the rule of ejusdem generis states that the general term is restricted to items similar to the specific terms." *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 125 Wn. App. 202, 211, 104 P.3d 699 (2005). Without considering the specific examples provided in Rule 13601(2)(c) as limiting the broad definition, an "item that is not attached to the building or site" would encompass nearly anything. Accordingly, we consider the provided regulatory examples: "[f]orklifts, chainsaws, air compressors, clamps, free standing shelving, software, ladders, wheelbarrows, and pulleys." Rule 13601(2)(c).

Most of these items fit the common understanding of "device," with the exception being "software." Software's place on the list indicates that DOR intended the M&E exemption to include some items that would not commonly be understood as "devices." We next evaluate DOR's additional commentary about software in its excise tax advisory.

### iii.    Computer Software

DOR, Excise Tax Advisory 3121.2009 (Feb. 2, 2009) (ETA 3121) specifically addresses the applicability of the M&E exemption to books and computer software. DOR quotes ETA 3121 for the proposition that Rule 13601's examples of "device" "'reflect the notion that the phrase machinery and equipment has a meaning within the context of an industrial setting.'"[7] Br. of Resp't at 13 (quoting CP at 204).

Excise tax advisories are interpretive statements authorized by RCW 34.05.230. DOR has authority to adopt interpretive regulations, however they are not binding on reviewing courts. *Ass'n of Wash. Bus. v. Dep't of Revenue*, 155 Wn.2d 430, 445, 447, 120 P.3d 46 (2005). Unlike legislative rules, interpretive rules "are afforded no deference other than the power of persuasion." *Ass'n of Wash. Bus.*, 155 Wn.2d at 447.

ETA 3121 provides that "[i]t is an established rule of statutory interpretation that words in a statute are given their ordinary and common meaning and that courts and others may resort to dictionaries to determine the meaning of statutory language." CP at 204. It then analyzes the

---

[7] The definition of "machinery and equipment" expressly includes "digital goods." RCW 82.08.02565(2)(a). DOR claims that this express inclusion suggests that other items not traditionally thought of as devices are intended to be excluded, per the principle of *expressio unius est exclusio alterius*. *See State v. Swanson*, 116 Wn. App. 67, 75, 65 P.3d 343 (2003). The legislative definition of "digital goods," however, does not include computer software or other digital items that could play an active role in a manufacturing operation. RCW 82.04.192(6). "Digital goods" are distinguishable from both software and Solvay's working solution in that they do not play any active role in the manufacturing process and would therefore not independently qualify as "devices."

dictionary definitions of "machinery," "machine," and "device" in various dictionaries. Finally, it states that Rule 13601's list of examples of "devices" fit "within the common dictionary definition of 'machinery and equipment' and 'device.'" CP at 204. After that, the remainder of ETA 3121 analyzes the M&E exemption's applicability to books and computer software specifically. ETA 3121's analysis of computer software provides guidance as to DOR's intended interpretation of unintuitive types of "devices."

Rule 13601 lists examples of "devices" as: "[f]orklifts, chainsaws, air compressors, clamps, free standing shelving, software, ladders, wheelbarrows, and pulleys." Rule 13601(2)(c). Nothing in Rule 13601 limits the definition of "software" to specific situations. However, ETA 3121 explains:

> Computer software satisfies Rule 13601's definition of device because it is performs [sic] a task and is also not attached to a building or site. Consequently, computer software can qualify for the M&E exemption if it meets a used directly test. The issue is whether the computer software performs a task in relation to the qualifying operation. For example, a computer software program that controls the operation of equipment that cuts logs into lumber qualifies for the M&E exemption. It performs a task, the control of a piece of eligible machinery, and is used directly in the manufacturing operation. On the other hand, a CD-ROM of a repair manual for this equipment does not qualify for the M&E exemption because the computer software does not perform a task in the manufacturing operation.

CP at 204.

All DOR's reasons for considering computer software to be a "device" for the M&E exemption appear equally applicable to the chemicals at issue in this case. Like software, the chemicals do not fit with the common understanding of what a "device" is, but still perform an important role in the manufacturing process. ETA 3121 states that only software that "performs a task in relation to the qualifying operation" is a "device" under the M&E exemption. CP at 204.

The working solution, flowing through its loop and providing the medium in which all of the chemical reactions required to form hydrogen peroxide occur, is as critical to Solvay's operations as the lumber software DOR references in ETA 3121. DOR's analysis of what makes software a "device" under the M&E exemption is equally applicable to the working solution Solvay uses in its manufacturing process.

### C. INGREDIENT OR COMPONENT

Solvay additionally contends that its working solution is "exempt as an ingredient or component of the reaction units that form the working solution loop." Br. of Appellant at 18. It claims that the "working solution loop is composed of a series of reaction units or stages that are attached to the land," forming an industrial fixture of which the working solution is part. Br. of Appellant at 19 n.4. It compares the working solution to the refrigerant in an air conditioner or the mercury in a thermometer.

DOR responds that the chemicals at issue "merely circulate through various equipment in Solvay's plant." Br. of Resp't at 21. It contends that Solvay's argument fails to identify a specific piece of equipment that the chemicals become a part of, instead claiming they become an ingredient or component of "the entire manufacturing process." Br. of Resp't at 22. We agree with Solvay.

The statutory definition of "machinery and equipment" includes "tangible personal property that becomes an ingredient or component" of "industrial fixtures, devices, and support facilities." RCW 82.08.02565(2)(a). Webster's dictionary defines "component" to mean "a constituent part." WEBSTER'S THIRD NEW INT'L DICTIONARY 466. It additionally defines "ingredient" as "something that enters into a compound or is a component part of any combination or mixture." WEBSTER'S THIRD NEW INT'L DICTIONARY 1162.

For the working solution to be an ingredient or component of the "working solution loop," as Solvay argues, the loop itself must be an industrial fixture or device. A "fixture" is "something that is fixed or attached as a permanent appendage or a structural part," or "a chattel that has been so wrought into or annexed to realty (as a house) that it may be regarded as legally a part of it." WEBSTER'S THIRD NEW INT'L DICTIONARY 861. An industrial fixture, therefore, is best understood as something that is fixed or attached to an industrial site.

Solvay's working solution loop consists of the hydrogenator, the oxidizer, the extraction column, and all the reaction vessels and pipes that connect these mechanisms. It meets the dictionary definition of an industrial fixture, as it is "fixed or attached" to the Longview plant.

A Solvay employee made an unrefuted declaration that the "working solution is a functional part of the reaction vessels and the reaction vessels cannot not [sic] operate without being filled with working solution." CP at 207. Because the working solution loop is an "industrial fixture," the working solution itself is an "ingredient or component" of it, making it "machinery and equipment" in its own right.

D.     OTHER EXEMPTION STATUTE

DOR contends that Solvay's expansive reading of the M&E exemption would intrude on other tax schemes specifically designed for chemicals. It contends that allowing Solvay to obtain the M&E exemption for its chemical purchases would allow it to "avoid the more stringent requirements for receiving a sales tax exemption under RCW 82.04.050(1)(a)(iii)." Br. of Resp't at 29. We disagree.

RCW 82.04.050(1)(a)(iii) exempts from retail sales tax:

Purchases for the purpose of consuming the property purchased in producing for sale as a new article of tangible personal property or substance, of which such property becomes an ingredient or component or is a chemical used in processing,

13

when the primary purpose of such chemical is to create a chemical reaction directly through contact with an ingredient of a new article being produced for sale.

This exemption contains two distinct requirements: (1) the property must be purchased for the purpose of consumption in the production of a new article of tangible personal property or substance; and (2) it must either (a) become an ingredient or component of the new article or (b) be a chemical used in processing. RCW 82.04.050(1)(a)(iii).

Although Solvay's working solution meets the latter requirement, it is not consumed in Solvay's production of hydrogen peroxide. This statute would therefore not exempt Solvay's purchases of working solution. Nonetheless, DOR contends that the existence of this exemption prevents the M&E exemption from applying to the working solution or any kind of chemicals used in the manufacturing process.

DOR's contention that calling DC and ASG "machinery and equipment" under the M&E exemption would let it "avoid the more stringent requirements" for an exemption under this other statute is misleading. Br. of Resp't at 29. Neither statute has more stringent requirements than the other because they apply to different items. One exempts machinery and equipment used in manufacturing; while the other exempts raw materials that are consumed in the manufacture of other products, often including chemicals. An additional exemption for chemicals used in manufacturing with different specific requirements does not convince us that chemicals can never qualify under the M&E exemption. We reject this argument.

II.    EXEMPTION CERTIFICATES

DOR contends that, even if Solvay's purchases of DC and ASG qualify for the M&E exemption, Solvay failed to provide DC and ASG sellers with exemption certificates, as required

14

by RCW 82.08.02565(1)(b).[8] Although it acknowledges that Solvay has now provided each seller with an exemption certificate, it claims that Solvay failed to "strictly comply with all the express requirements" of the statute. Br. of Resp't at 32.

The M&E exemption requires that "sellers making tax-exempt sales under this section must obtain from the purchaser an exemption certificate in a form and manner prescribed by the department by rule. The seller must retain a copy of the certificate for the seller's files." RCW 82.08.02565(1)(b). DOR regulations mandate:

> The purchaser must provide the seller with an exemption certificate. The exemption certificate must be completed in its entirety. The seller must retain a copy of the certificate as a part of its records. This certificate may be issued for each purchase or in blanket form certifying all future purchases as being exempt from sales tax. Blanket certificates are valid for as long as the buyer and seller have a recurring business relationship.

Rule 13601(3)(a). DOR provides a standardized form on its website for purchasers to fill out and offer sellers. *See* Rule 13601(3)(a).

In this case, Solvay provided copies of ten single use exemption certificates it had provided to its sellers. Each certificate provided all of the information required by Rule 13601(3)(a). Each certificate was signed on February 8, 2017 and stated the purchase date it applied to. These dates ranged from January 2008 to November 2012.

---

[8] The trial court granted DOR's summary judgment motion on the issue of whether DC and ASG qualified as "machinery and equipment" and so did not reach this issue. However, we may affirm on any basis supported by the record so we address this issue as well. *Bavand v. OneWest Bank, FSB*, 196 Wn App. 813, 825, 385 P.3d 233 (2016).

Neither the statute nor the rule require a purchaser to provide a seller with an exemption certificate at the time of sale.[9] DOR does not argue that there are any timing requirements for the required exemption certificates. Rather, it claims that Solvay must "strictly comply with all the express requirements in a statute." Br. of Resp't at 32. Because Solvay provided its sellers with exemption certificates, it complied with all duties the statute imposed.

III.    CONCLUSION

We conclude that the M&E exemption applies to Solvay's purchases of DC and ASG for use in its working solution. Accordingly, we reverse and remand for the trial court to enter summary judgment for Solvay.

_____
                Melnick, J.

We concur:

_____
      Maxa, C.J.

_____
      Lee, J.

---

[9] DOR points out that a different version of the statute applied for the majority of the time period covered by the audit. LAWS OF 1999, ch. 211 § 3. Because neither version of the statute imposes any timing requirement for buyers to provide these exemption certificates, the earlier version does not affect our decision.