IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BREANN ACORD and KEITH ACORD, wife and husband, Washington State residents, | ) ) ) ) | No. 41079-0-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| SQUEAKY'S LUBE EXPRESS, INC., a Washington State corporation, | ) ) ) ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — BreAnn Acord and Keith Acord (the Acords) appeal

the trial court's dismissal of their lawsuit against Squeaky's Lube Express, Inc.,

(Squeaky's) for insufficient service of process. Just days before the statute of limitations

would have run, the Acords served a nonmanagement employee who handled the

business's cash and may have had regular, meaningful contact with the Squeaky's

president. In reversing the trial court, we construe *Spencer v. Franklin Hills Health-*

*Spokane, LLC*, 3 Wn.3d 165, 548 P.3d 193 (2024), as requiring an evidentiary hearing so

that findings of fact can be made to determine whether Sara Ford was the office assistant

of the president. If so, service on her was sufficient under former RCW 4.28.080(9)

No. 41079-0-III
*Acord v. Squeaky's Lube Express*

(2015).

FACTS

On June 10, 2021, BreAnn Acord tripped and fell at a car wash owned by

Squeaky's. On June 7, 2024, the Acords filed this lawsuit against Squeaky's.

On September 4, 2024, just days before the 90-day tolling period described in

RCW 4.16.170 would have expired, the Acords' attorney, David Barbe, served process

on Sara Ford. The declaration of service described Ms. Ford as Squeaky's "Cashier."

Clerk's Paper (CP) at 7.

Squeaky's moved to dismiss the Acords' lawsuit under CR 12(b)(5) for

insufficient service of process. It supported its motion with a declaration from Ms. Ford.

Ms. Ford stated that she was not authorized to accept service on behalf of Squeaky's and

described herself as a nonmanagerial employee whose duties involved taking payments

from customers and keeping the premises clean. She also stated that Squeaky's owner,

Mike Kennedy, was also the manager.

Mr. Barbe filed an opposing declaration. Mr. Barbe stated that he had determined

through the secretary of state's website that Mr. Kennedy was Squeaky's president,

governor, and registered agent, and the address for service was 33 N. Willow Road.

He stated he approached two men washing cars for Squeaky's, said he had legal

documents to serve, and asked if Mr. Kennedy was around; he was told Mr. Kennedy was not. The senior of the two car wash employees directed Mr. Barbe to "Sara," who was in the small building on the property, and said, "[S]he is in charge of that." CP at 34.

Mr. Barbe included a picture of the small building and accurately described it as a six-foot by six-foot "one-story building" with the number 33 on it. CP at 34. Mr. Barbe then gave the summons and complaint to Ms. Ford, the only person in the small building, who described herself as Squeaky's cashier.

Squeaky's motion to dismiss and the Acords' response focused on whether Ms. Ford was a "cashier," within the meaning of former RCW 4.28.080(9). The trial court concluded that Ms. Ford was not a "cashier," as that term was understood when the statute was enacted and granted Squeaky's motion to dismiss.

The Acords filed a timely motion for reconsideration. In their motion, they argued that Squeaky's was properly served because Ms. Ford was the office assistant of the president, within the meaning of former RCW 4.28.080(9). The Acords also asked for an evidentiary hearing. The trial court denied the Acords' motion for reconsideration and their request for an evidentiary hearing.

The Acords appeal to this court.

3

No. 41079-0-III
*Acord v. Squeaky's Lube Express*

ANALYSIS

A.    SCOPE OF REVIEW

The Acords' March 12, 2025, notice of appeal sought review of the order denying reconsideration and attached that order to their notice. Squeaky's argues that the notice does not permit this court to review the trial court's January 3, 2025, order of dismissal. It notes that RAP 5.2 generally requires a party to file a notice of appeal within 30 days after entry of the decision the party wants reviewed and more than 30 days lapsed between the January order of dismissal and the March notice of appeal.

The Acords respond that RAP 2.4(b) authorizes the appellate court to review an order not designated in the notice if that order (1) prejudicially affects the designated notice and (2) was entered before the appellate court accepted review. They also assert that the order of dismissal prejudicially affects the reconsideration order because it would not have happened had the court ordered their lawsuit dismissed. We agree. *See Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 379, 46 P.3d 789 (2002) ("prejudicially affects" means the order appealed from would not have happened but for the first order). We conclude the scope of our review includes both the argument raised in the order of dismissal and the argument raised in the reconsideration motion.

4

B.     AMENDMENT OF RCW 4.28.080

The legislature amended RCW 4.28.080 after the trial court entered its rulings. The amendment no longer includes language similar to former RCW 4.28.080(9) and requires compliance with RCW 23.95.450 to serve a represented entity such as a corporation.  RCW 4.28.080(8).

Squeaky's suggests that RCW 23.95.450 applies to this appeal.  We disagree. Statutory amendments apply prospectively unless the legislature indicates otherwise. *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 460, 832 P.2d 1303 (1992).  Here, there is nothing in the amended statute to suggest retroactive application.

C.     SERVICE ON MS. FORD MAY HAVE BEEN SERVICE ON SQUEAKY'S

The Acords argue the trial court erred by concluding that Ms. Ford was not Squeaky's "cashier" or the "office assistant of the president" within the meaning of former RCW 4.28.080(9).  As explained below, we conclude the trial court erred by not granting the Acords' request for an evidentiary hearing limited to whether Ms. Ford was the office assistant of Mr. Kennedy.

Former RCW 4.28.080(9) permits service on a corporation by serving (1) its president or other head of the company, (2) its registered agent, (3) its secretary, (4) the secretary's cashier or managing agent, (5) the stenographer of the company, (6) or the

5

office assistant of (a) the president or head of the company, (b) the registered agent of the company, (c) the secretary of the company, (d) the cashier of the company, or (e) the managing agent of the company.[1]

### 1. Ms. Ford is not Squeaky's "cashier"

Although the term "cashier" was first used in the statute in 1893,[2] the term has not been examined in any published decision construing former RCW 4.28.080(9).

Squeaky's argues that we should construe the term as it was intended in 1893, not in the broader modern meaning, and relies on the maxim "noscitur a sociis," which requires courts to construe a term consistent with its surrounding terms. *See In re Dependency of A.P.*, 177 Wn. App. 871, 878, 312 P.3d 1013 (2013).

Citing *First National Bank v. Conway*, 87 Wash. 506, 508, 151 P. 1129 (1915) (the individual was both the bank's president and cashier), and the surrounding terms such as "president," "head of the company," and "secretary," Squeaky's argues that "cashier" should be construed as a person with actual authority in the company whose purpose it is to handle money. We find Squeaky's argument compelling. Were we to

---

[1] We elect to paraphrase the subsection rather than quote it. The subsection is difficult to read and paraphrasing makes it more clear.

[2] LAWS OF 1893, ch. 127, § 7(8).

give "cashier" its broad modern meaning, it would permit service of process on persons with little if any real authority in a company, such as a cashier working for a large grocery chain.

Here, Ms. Ford described herself as a nonmanagement employee who takes payments from customers and keeps the small building clean. Although the employee washing cars at Squeaky's might have considered Ms. Ford the person to receive legal documents, this belief does not compel the legal conclusion that Ms. Ford was statutorily authorized to receive process. As a nonmanagement employee, Ms. Ford does not have actual authority in the company. We conclude that the trial court did not err in rejecting the Acords' argument that Ms. Ford was Squeaky's "cashier."

### 2. Ms. Ford may have been the office assistant of Mr. Kennedy

In *Spencer*, the court provided guidance for determining whether an employee is the office assistant of a high-ranking corporate person for purposes of former RCW 4.28.080(9). 3 Wn.3d at 171. Before providing this guidance, the court emphasized that its fundamental objective in statutory interpretation is to ascertain the legislature's intent, which in the case of service of process, is to provide notice and an opportunity to be heard. *Id.* at 170. The court concluded that this purpose is best furthered by giving a liberal construction to the service of process statute "'while

7

adhering to its spirit and intent.'" *Id.* at 170-71 (quoting *Sheldon v. Fettig*, 129 Wn.2d 601, 607, 919 P.2d 1209 (1996)).

The *Spencer* court then noted that former RCW 4.28.080(9) not only permitted service on those with high positions, but also on people who "understand the workings of the organization and know how to get important legal documents for the corporation into the hands of those who will need to act on them." *Id.* at 171. The *Spencer* court described these people as including the "office assistant" of the corporation's secretary, cashier or managing agent, and described them as having "regular, meaningful contact with the corporation's heads." *Id.* Construing *Spencer*, we conclude that the office assistant of the president is one who has regular, meaningful contact with the president and knows how to get important documents to that person. Moreover, because we must construe the statute liberally, we conclude that a president can have more than one office assistant. The important consideration is not which assistant is closest to the president but whether the assistant had regular, meaningful contact with the president.

Here, it is clear that Ms. Ford knew how to get important legal documents to Mr. Kennedy. The record suggests that Squeaky's is a small company with a very limited number of employees. One can surmise that Ms. Ford, who Mr. Kennedy entrusted with his company's money, had his cellular number so she could reach him quickly and easily.

In addition, Mr. Kennedy is the manager of Squeaky's, and we might also infer he was Ms. Ford's manager. From the record, we might infer that Ms. Ford had regular, meaningful contact with Mr. Kennedy and an evidentiary hearing is not necessary. But the better course is to direct an evidentiary hearing so findings of fact can be entered.[3] A CR 12(d) preliminary hearing involving witnesses is appropriate when there are issues of fact, *Spencer*, 3 Wn.3d at 177 (Stephens, J., concurring in part/dissenting in part), including here, where an appellate court would be required to infer facts.

The parties raise an evidentiary issue in their briefs that might be raised at the hearing if not decided here. The Acords assert that the senior car washer's statement— that Ms. Ford was in charge of accepting legal documents—is admissible under ER 801(d)(2)(iv). Under this rule, a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant acting within the scope of the authority to make the statement for the party." To come within this rule, the Acords must show that Squeaky's gave the employee authority to describe Ms. Ford's scope of duties within the business. *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 262, 744 P.2d 605 (1987).

---

[3] Whether the two had regular, meaningful contact is peculiarly within the knowledge of Ms. Ford and Mr. Kennedy. It would be appropriate for the trial court to permit the Acords to engage in limited discovery to establish whether the two had regular, meaningful contact.

Resolution of this issue necessarily will depend on the evidence. Beyond framing the legal standard, we offer no further guidance.

### 3. *Substantial compliance*

The Acords argue that service on the corporation is sufficient if there is substantial compliance and, here, there was substantial compliance because actual notice was provided to Mr. Kennedy, Squeaky's president and registered agent. Squeaky's responds that the Acords did not raise this argument to the trial court and that we should not consider it on appeal.

In general, we will not consider an argument raised for the first time on appeal. RAP 2.5(a). But because we are remanding for an evidentiary hearing, we elect to address it now rather than in a second appeal.

The Acords do not cite any authority to support their contention that actual notice to the corporation is sufficient service of process. Whether substantial compliance applies to service of process appears to be an open question. *See Weiss v. Glemp*, 127 Wn.2d 726, 732, 903 P.2d 455 (1995) (declining to decide the question). But we can firmly say that actual notice, alone, was not sufficient service in *Weiss*, so it should not be sufficient service here.

In *Weiss*, Cardinal Glemp avoided service by remaining in the rectory after the Cardinal's personal secretary told the process server to leave. 127 Wn.2d at 729. After two hours and with Cardinal Glemp on the other side of a glass window, the process server yelled to the Cardinal that the documents in his hand were legal documents and that he had been served. *Id.* As the Cardinal looked at the messenger, the messenger placed the documents on the concrete windowsill four feet away from where the Cardinal was sitting. *Id.* Even though Cardinal Glemp received actual notice of the documents, the *Weiss* court determined that the process server "failed to comply with even the rudiments of the statutory requirements." *Id.* at 732.

We conclude that actual notice is not substantial compliance with the statutory service requirements. This is consistent with *Spencer*'s liberal construction rule that describes compliance as requiring effectuation of the statute's purpose, i.e., notice and an opportunity to be heard, "'while adhering to its spirit and intent.'" *Spencer*, 3 Wn.3d at 171 (quoting *Sheldon*, 129 Wn.2d at 607). The statute's intent certainly is not furthered by allowing service on persons not designated in the statute.

We reverse the order of dismissal and remand for an evidentiary hearing so that findings of fact can be made to determine whether Ms. Ford was the office assistant of the president.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Cooney, A.C.J.

_____
Murphy, J.